**Larry Wayne HAYNES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–01–380–CR.**

Court of Appeals of Texas,
Waco.

Aug. 21, 2002.

Mark D. Griffith, Griffith & Associates, Waxahachie, for Appellant/Relator.

Joe F. Grubbs, Ellis County District Attorney, Cynthia W. Hellstern, Ellis County Assistant District Attorney, Waxahachie, for Appellee/Respondent.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

Following a running argument with his wife and a brief argument with his fifteen-year-old son, Larry Wayne Haynes, who had been drinking beer, got his shotgun. Seconds later his son, Matthew, was dead of a close-range shotgun blast to the head. Haynes was indicted for murder, but a jury convicted him of the lesser-included offense of manslaughter, presumably because there was evidence that the shooting may have been the result of "reckless" behavior rather than intentional behavior. Tex. Pen.Code Ann. § 19.04 (Vernon 1994). The jury assessed punishment at twenty years in prison.

Haynes raises two issues on appeal: [1]

---

1. *This* is an out-of-time appeal granted by the Court of Criminal Appeals on a writ of habeas corpus. Haynes was convicted in 1996.

1. The court erred in submitting an instruction to the jury about intoxication.

2. The court erred in admitting evidence of Haynes's intoxication.

We will affirm the judgment.

### Jury Instruction on Intoxication

In the guilt-innocence charge, the court, over defense counsel's objection, included this instruction:

You are instructed that a person is deemed to be intoxicated within the meaning of the law when such person does not have the normal use of his physical and mental faculties by reason of the introduction of alcohol or other substances into the body. You are further instructed that voluntary intoxication is not a defense to commission of crime.

The instruction comes from the Penal Code:

§ 8.04 Intoxication

(a) Voluntary intoxication does not constitute a defense to the commission of crime.

(b) Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried.

(c) When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication, the court shall charge the jury in accordance with the provisions of this section.

(d) For purposes of this section "intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

Id. § 8.04 (Vernon 1994).

Haynes argues that the instruction is only appropriate when the defendant presents an "intoxication-insanity" defense during the punishment phase of trial. If, as here, the defendant does not rely on "intoxication" at all, then to include the instruction in the guilt-innocence charge is a harmful judicial comment on the evidence, i.e., it implies that the judge believes the defendant was intoxicated.

Haynes relies heavily on *Gonzales v. State*, 838 S.W.2d 848, 866 (Tex.App.-Houston [1st Dist.] 1992, pet. dism'd). On appeal from a murder trial, the Houston court reversed a conviction on a lesser-included charge of voluntary manslaughter due to "sudden passion," [2] because the trial court gave an instruction in the guilt-innocence charge virtually identical to the one in the present case. The Houston court said the instruction violated article 36.14, which says in part: "... the judge shall ... deliver to the jury ... a written charge ... not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2002). Whether the defendant was intoxicated was a major issue in the case, the State claiming he was and the defendant denying it. *Gonzales*, 838 S.W.2d at 866. The court, citing the Court of Criminal Appeals, determined that the instruction is proper during the guilt-innocence phase only if the defendant claims as a defense that he was too intoxicated to have committed the offense. *Id.* (referring to

---

**2.** Formerly section 19.04 of the Penal Code, now repealed and recodified as a punishment

issue under section 19.02(d).

*Jaynes v. State*, 673 S.W.2d 198, 201–02 (Tex.Crim.App.1984) (instruction appropriate in a "stop-and-render-aid" case when defendant claimed that, because of excessive use of alcohol, she did not know she had struck anyone with her car); *Evilsizer v. State*, 487 S.W.2d 113, 114–17 (Tex. Crim.App.1972) (instruction appropriate when defendant claimed he had a brain syndrome caused by long-term excessive use of alcohol, and the syndrome caused insanity during the offense); *Valdez v. State*, 462 S.W.2d 24, 27 (Tex.Crim.App. 1970) (instruction appropriate when defendant claimed he was asleep during the crime from too much alcohol)). The Houston court found that the effect of the instruction was to imply to the jury that the judge agreed with the State on this issue. *Gonzales*, 838 S.W.2d at 867.

■ The Court of Criminal Appeals more recently discussed section 8.04 in *Taylor v. State*, 885 S.W.2d 154 (Tex.Crim. App.1994). The defendant claimed that due to psychosis, she did not know right from wrong when she murdered her child; the State countered that her use of marijuana triggered the psychotic reaction. *Id.* at 155. The defendant objected to the court's submission of an instruction under section 8.04. *Id.* The Court explained that subsection "a" refers to the guilt-innocence phase of trial, subsection "b" refers to the punishment phase, and subsection "c" is a non-exclusive provision concerning the jury charge. *Id.* at 156. Thus, subsection "c" does not control whether an instruction is required under subsection "a" at the guilt-innocence phase.[3] *Id.* at 157. The defendant need not have advanced a de-

fense based on intoxication. *Id.* at 158. "[I]f there is any evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions, an instruction is appropriate." *Id.*

■ The evidence at Haynes's trial was hotly contested about whether Haynes was intoxicated, with both sides presenting witnesses to either prove (the State) or disprove (Haynes) that he was. At no time did Haynes attempt to rely on any defense based on intoxication; he argued that the shooting was an accident. Evidence of intoxication was presented by the State and not the defense—the State's theory was that Haynes killed his son in a drunken rage. However, a jury could have concluded that Haynes lacked the "intent" for murder because he was intoxicated. Because, under *Taylor*, evidence of intoxication "from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions" allows for the instruction, the instruction was appropriate, and the court did not err in giving it.

We overrule the issue.

### Evidence of Intoxication

To prove its theory of the case, the State wanted to show that Haynes was intoxicated at the time of the shooting. The State called three witnesses on this issue. A neighbor testified that Haynes was frequently intoxicated. Haynes's brother testified that Haynes was "a little buzzed" at the time of the shooting which would take a lot of beer because Haynes drank every day. Matthew's girlfriend testified that

---

3. Judge Clinton put it succinctly in his concurring opinion: "That means, consistent with subsection 'a' of § 8.04, that whenever the evidence raises an issue whether the accused was voluntarily intoxicated at the time he committed the offense, an instruction to the jury that his voluntary intoxication does

not excuse his conduct would be appropriate, irrespective of whether the evidence suggests his level of intoxication was such as to have produced a state of temporary insanity." *Taylor v. State*, 885 S.W.2d 154, 159 (Tex. Crim.App.1994) (Clinton, J. concurring).

when she and her grandmother would drop Matthew off at home, Haynes was usually asleep from drunkenness. Haynes argues that this evidence is inadmissible under Rule 404(b). TEX.R. EVID. 404(b).

As the State points out, the testimonies of Haynes's brother and Matthew's girlfriend were not objected to, which forfeits any complaint relative to them. TEX.R. EVID. 103; TEX.R.APP. P. 33.1. As for the neighbor's testimony, we note that Rule 406 allows for evidence of a "habit" if relevant, as Haynes's drinking habit was here. But regardless of that, evidence of Haynes's previous drinking came in through the testimony of his brother and Matthew's girlfriend. "[I]t is well settled that an error in admission of evidence is cured where the same evidence comes in elsewhere without objection; defense counsel must object every time allegedly inadmissible evidence is offered." *Hernandez v. State*, 914 S.W.2d 226, 233 (Tex. App.-Waco 1996, no pet.) (citing *Hudson v. State*, 675 S.W.2d 507, 511 (Tex.Crim.App. 1984)). As the Court of Criminal Appeals said in *Leday v. State:*

> Our rule, therefore, is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. This rule applies whether the other evidence was introduced by the defendant or the State. [citations omitted] The rule has never been otherwise, so far as we know. In *Wagner v. State*, 53 Tex.Crim. 306, 307, 109 S.W. 169, 169 (1908), we said, "It is well settled in this state that

the erroneous admission of testimony is not cause for reversal, if the same fact is proven by other testimony not objected to. See.... *West v. State*, 2 Tex.App. 460 [1877 WL 8432] [1877]....."

*Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim.App.1998). The Court discussed whether the rule is one of waiver or harmless error, but did not definitively state which it is. *Id.* Regardless, based on the rule, we overrule the issue.[4]

### Conclusion

Having overruled Haynes's issues, we affirm the judgment.

---

**4.** And, under a traditional harm analysis Haynes would not prevail. We disregard errors in admitting evidence unless they "affect substantial rights." TEX.R. EVID. 103; TEX. R.APP. P. 44.2(b). Here, the evidence was undisputed that Haynes shot Matthew in the back of the head. Also, forensics experts testified that Haynes's version of how the shotgun accidentally "went off" could not be true

because of the angles of the entry and exit wounds. That called his "accident" defense into question. In addition, Haynes's wife and brother, who witnessed the shooting, did not confirm Haynes's version of the events. Thus, even without this intoxication evidence, there was ample evidence that Haynes either intentionally or recklessly killed Matthew.