David Lee WISDOM, Appellant

v.

The STATE of Texas, Appellee.

No. 10–02–00171–CR.

Court of Appeals of Texas, Waco.

July 14, 2004.

---

Shelly D. Fowler, Cleburne, for David Lee Wisdom.

Dale S. Hanna, Johnson Coutny Dist. Atty., David W. Vernon, Johnson County Asst. Dist. Atty., Cleburne, for The State of Texas.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.*

## MEMORANDUM OPINION

FELIPE REYNA, Justice.

A jury convicted David Lee Wisdom of three counts of aggravated assault. He contends in three issues that the court erred by: (1) denying his second motion for continuance premised on the unavailability of a particular psychiatrist to assist in evaluating whether to pursue the insanity defense; (2) admitting a previously recorded statement of one of the State's witnesses as a prior consistent statement under Rule of Evidence 801(e)(1)(B); and (3) denying a motion for a mistrial premised on non-responsive testimony by another of the State's witnesses regarding his prior DWI probation.

We conclude that Wisdom is estopped to complain about the court's denial of the second continuance motion because he withdrew his notice of intent to raise the insanity defense, that the court did not abuse its discretion by admitting the previously recorded statement because Wisdom's cross-examination of this witness raised an inference of recent fabrication or improper influence, and that any error in the denial of the motion for mistrial was rendered harmless when Wisdom later testified to the same facts as those which prompted his request for a mistrial.

## BACKGROUND

David and Kathleen Wisdom married in February 2001. They separated in Sep-

* This case was submitted with former Chief Justice Davis on the panel, but he resigned effective August 4, 2003. Justice Reyna, who took the oath of office on January 5, 2004, participated in the decision of the Court.

tember, and Kathleen moved in with Daniel Filkins, her former boyfriend and the father of her child. The next month, Melissa Hodges and her two daughters, A.H. and M.H., visited Kathleen. Filkins was not at home. When Wisdom came to the home, Kathleen let him in because she thought he was there to see Filkins about buying a car. Once inside, Wisdom pulled out a pistol and threatened to kill Filkins. He waived the pistol at Kathleen, Hodges, and A.H. and ordered them to lie down on the floor. Instead, A.H. fled into the garage, and during the confusion, all the occupants were able to exit the home. Filkins arrived and encountered Wisdom outside coming toward him with the pistol. Wisdom followed Filkins into the backyard where eight shots were fired, two striking Filkins in the chest and abdomen. Wisdom threw the pistol into Filkins's lap and said: "This is what you get for stealing my wife."

Two off-duty police officers were nearby and heard the shots. They went to the home where they found Wisdom sitting on the tailgate of a pickup. He admitted trying to kill Filkins.

A grand jury presented a four-count indictment against Wisdom for attempted murder and aggravated assault with respect to the shooting of Filkins and for two additional counts of aggravated assault by threatening Kathleen and Hodges with the pistol. The State abandoned the attempted murder count on the day of trial. The jury convicted Wisdom on the remaining counts. The jury assessed his punishment at seventeen years' imprisonment for shooting Filkins. The jury assessed his punishment at ten years' imprisonment on each of the remaining counts and recommended that he receive community supervision on these counts.

## DENIAL OF CONTINUANCE

Wisdom contends in his first issue that the court abused its discretion by denying his second motion for continuance premised on the unavailability of a particular psychiatrist to assist in evaluating whether to pursue the insanity defense.

### PERTINENT FACTS

On the Thursday before a Monday trial setting, defense counsel informed a visiting judge at a pretrial conference that she had just received information from Wisdom's psychiatrist, Dr. Charles Yackulic, that Wisdom was suffering from a severe mental illness. Wisdom had been treated by Dr. Yackulic at an MHMR facility for depression and suicidal urges. Counsel filed a verified "Motion for Continuance," in which counsel discussed Wisdom's mental health diagnosis. Counsel requested "a minimum of two months to investigate, explore and evaluate Defendant's mental state both at the time of offense, and present."

Counsel also filed a "Motion for Examination Regarding Incompetency," in which she requested that an expert be appointed to examine Wisdom and that, if appropriate, a competency hearing be held. A visiting judge orally granted the motion for a competency examination, appointed a psychiatrist, Dr. Harry Baker, to examine Wisdom, set a competency hearing for the morning of trial, and left the trial setting in place. In so ruling, the visiting judge stated, "I'll leave this Motion for Continuance [and] let the Judge consider that Monday."

On the morning of trial, Wisdom filed a notice of intent to raise the insanity defense, a motion to be examined by Dr. Yackulic regarding the insanity defense, and a second verified motion for continuance. In the second continuance motion, counsel requested additional time to per-

mit Dr. Barry Norman to examine Wisdom "for competency." The motion cites information from Dr. Yackulic suggesting that Wisdom suffers from "severe mental illness" and may have been insane at the time of the offense. Wisdom's counsel attached an affidavit in support of the motion explaining that counsel was investigating whether to pursue an insanity defense, that Dr. Yackulic was out of town until a week after trial, and that Wisdom should be examined with regard to the insanity defense.

When the court took up Wisdom's motions that morning, Wisdom's counsel orally requested a continuance to permit her client to be examined by Dr. Yackulic for insanity. The State objected that Wisdom's notice of intent to raise the insanity defense was untimely, that Dr. Baker was available to examine Wisdom for insanity, and that Dr. Yackulic was not a disinterested expert because he had been Wisdom's treating physician. The State also commented that Dr. Baker had evaluated Wisdom's competency after Wisdom's counsel filed her first continuance motion. In response, Wisdom's counsel stated that she did not "have a problem with another doctor" conducting the evaluation and had "just requested Dr. Barry Norman be used to examine him."

The court suggested that the prosecutor contact MHMR and try to identify another physician who could evaluate Wisdom "[j]ust on the insanity issue." The prosecutor determined that a Dr. Srivinas Reddy could do so. The court signed an order appointing Dr. Reddy to examine Wisdom for insanity.

Wisdom's counsel asked the court to have Dr. Reddy evaluate her client's competency as well. The court declined, stating a preference to wait until Dr. Baker testified on this issue before determining whether another competency evaluation

was necessary. The court also advised that it would delay the summoning of a jury panel for a trial on the merits by a half day (until Tuesday afternoon) to permit Wisdom's counsel to review Dr. Reddy's report and decide whether to pursue an insanity defense.

A jury found Wisdom competent to stand trial. Before the commencement of voir dire the following afternoon, Wisdom's counsel announced that she was withdrawing the notice of intent to pursue the insanity defense because both psychiatrists who examined him concluded that he was not insane at the time of the offense.

After conviction, Wisdom asked for a new trial because Dr. Yackulic was unavailable to testify at trial regarding his sanity as alleged in the second continuance motion.

## PRESERVATION FOR APPELLATE REVIEW

■ The State contends that Wisdom failed to preserve his first issue for appellate review because: (1) the second continuance motion requested additional time for a psychiatric evaluation by Dr. Norman, but the motion for new trial complained of the court's failure to grant a continuance due to the absence of Dr. Yackulic; and (2) Wisdom failed to object to the court's failure to rule on the continuance motion.

To preserve an issue for appellate review, a defendant must make a timely and specific objection, motion, or request and obtain an adverse ruling. *See Garza v. State*, 126 S.W.3d 79, 81–82 (Tex.Crim. App.2004); TEX.R.APP. P. 33.1(a). Texas courts have imposed additional preservation requirements in cases involving the denial of a continuance. Some courts have held that the issue is not preserved if the defendant failed to file a written, sworn continuance motion as required by statute. *E.g., Matamoros v. State*, 901 S.W.2d 470,

478 (Tex.Crim.App.1995); *Garcia v. State*, 960 S.W.2d 329, 333 (Tex.App.-Corpus Christi 1997, no pet.). Others have held that when a continuance is sought because of an absent witness the only manner by which the issue can be preserved is by motion for new trial. *E.g., Taylor v. State*, 612 S.W.2d 566, 569 (Tex.Crim.App. [Panel Op.] 1981); *Tucker v. State*, 109 S.W.3d 517, 520 (Tex.App.-Tyler 1999, pet. ref'd).

Wisdom's pleadings are not models of clarity. However, in his second continuance motion and supporting affidavits and in the discussion of that motion before the trial court, Wisdom plainly informed the court that he desired a continuance of the trial setting for an insanity evaluation. Wisdom's counsel expressed a preference for an insanity evaluation by Dr. Yackulic in the affidavit attached to the continuance motion and in the course of the discussion regarding the motion. Wisdom similarly complained in his motion for new trial that the court erred by denying the second continuance motion because of Dr. Yackulic's absence.

Although the court did not state on the record that it was denying Wisdom's second continuance motion, the court advised the parties that it was only postponing the commencement of the trial on the merits from Tuesday morning to Tuesday afternoon; the court did not appoint Dr. Yackulic or the other doctor referenced in the

continuance motion (Dr. Norman) and instead appointed Dr. Reddy to conduct the evaluation; and the court made a handwritten docket notation stating that the continuance motion was "denied."

Because Wisdom requested a continuance so that Dr. Yackulic could conduct an insanity evaluation, because the court denied[1] this request, and because Wisdom complained of this denial in his motion for new trial, he has preserved this issue for our review.

### ESTOPPEL

■ After a jury found Wisdom competent to stand trial, the parties reconvened for a trial on the merits the following afternoon. Wisdom's counsel informed the court that she was withdrawing the notice of intent to pursue the insanity defense. Because Wisdom affirmatively withdrew his notice of intent to pursue the insanity defense, he is estopped from complaining of the denial of the requested continuance motion for an insanity evaluation. *See Ripkowski v. State*, 61 S.W.3d 378, 388–89 (Tex.Crim.App.2001); *Strauss v. State*, 121 S.W.3d 486, 490 (Tex.App.-Amarillo 2003, pet. ref'd). Accordingly, we overrule Wisdom's first issue.

### PRIOR CONSISTENT STATEMENT

■ Wisdom contends in his second issue that the court abused its discretion by

---

1. In other contexts, a docket entry may not suffice to preserve an issue for appellate review. For example, Rule of Appellate Procedure 21.8(b) provides that a motion for new trial can be granted only by written order and that "[a] docket entry does not constitute a written order." TEX.R.APP. P. 21.8(b); *accord State v. Garza*, 931 S.W.2d 560, 561–62 (Tex. Crim.App.1996). The Dallas Court of Appeals has similarly concluded that a docket entry reflecting the granting of a defendant's special plea of double jeopardy does not constitute a written order from which the State can perfect an appeal under article 44.01. *State*

*v. Shaw*, 4 S.W.3d 875, 878 (Tex.App.-Dallas 1999, no pet.). Conversely, a verbal statement on the record that a continuance motion is "overruled" constitutes a sufficient adverse ruling for preservation purposes. *See Farris v. State*, 819 S.W.2d 490, 504–05 (Tex.Crim. App.1990). In the same manner, the written docket notation in Wisdom's case suffices as an adverse ruling. *Cf. Miller v. State*, 866 S.W.2d 243, 245 n. 5 (Tex.Crim.App.1993) (referring to docket entry to conclude that court overruled motion challenging appointment of visiting judge).

admitting in evidence a previously recorded statement of a witness, A.H., as a prior consistent statement under Rule of Evidence 801(e)(1)(B). Because Wisdom's cross-examination of A.H. raised an inference of recent fabrication or that the prosecutor, A.H.'s mother, and/or Kathleen had improperly influenced A.H.'s testimony, the trial court did not abuse its discretion by admitting the previously recorded statement.

A.H. testified that, after Wisdom arrived at Kathleen's house, the two of them had a conversation in the living room and then came into the kitchen. Wisdom removed a pistol from the back of his jeans, pointed it at Kathleen, then told everyone to get down. A.H. fled from the kitchen to the garage, followed shortly by her mother. They opened the garage door and fled the premises, going to a neighbor's house.[2]

On cross-examination, Wisdom's counsel asked A.H. about a prior statement she provided to the police on the night of the shooting. Counsel asked A.H. if she had said in the prior statement that her mother hid behind some bushes after fleeing the house. A.H. said she did. Counsel asked A.H. about the part of the prior statement in which she said that she saw Wisdom and Kathleen talking by the mailbox after she fled the house. A.H. agreed that she had said this in the statement but had since concluded that it was incorrect. She elaborated that she thought she saw Kathleen talking to someone, but it was not Wisdom. Counsel also noted that A.H. did not say in her prior statement that Wisdom had pointed the gun at anyone, only that he had pulled it out and told everyone to get down.

Wisdom's counsel noted that A.H. had talked with the prosecutor earlier that day, then listened to her prior statement, and then talked further with the prosecutor about the case. A.H. agreed that there were discrepancies between the prior statement and her testimony. Wisdom's counsel again highlighted that in the prior statement A.H. (1) did not say anything about Wisdom pointing the pistol and (2) said that she was not sure Wisdom had said anything when he pulled the pistol but thought he said for everyone to get down. Counsel then asked whether A.H. had heard Kathleen and her mother discussing the case since the shooting.

On redirect, the State offered A.H.'s recorded statement in evidence to rebut the inference of recent fabrication or improper influence raised by the cross-examination. The court admitted the recording over Wisdom's objection.

We review a court's ruling on the admissibility of evidence for an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App.2003). We will affirm if the ruling lies within the zone of reasonable disagreement. *Id.*

Rule 801(e)(1)(B) allows for the admission of a witness's prior consistent statement "to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Tex.R. Evid. 801(e)(1)(B). Here, defense's counsel's cross-examination raised an inference of recent fabrication or that the prosecutor, A.H.'s mother, and/or Kathleen had improperly influenced her testimony. *See Moody v. State*, 827 S.W.2d 875, 893–94 (Tex.Crim.App.1992); *Turro v. State*, 950 S.W.2d 390, 404–05 (Tex.App.-Fort Worth 1997, pet. ref'd); *Long v. State*, 821 S.W.2d 216, 217 (Tex.App.-Houston [14th Dist.] 1991, no pet.).

2. Before running to the neighbor's house, A.H. briefly re-entered Kathleen's house to get her little sister M.H. after she believed that Wisdom had exited the house.

Although there are discrepancies between A.H.'s prior statement and her testimony, we can discern no abuse of discretion in the court's decision to admit the prior statement to rebut the inference of recent fabrication or improper influence. *Cf. Wood v. State,* 833 S.W.2d 753, 754 (Tex.App.-Houston [1st Dist.] 1992, no pet.) (witness's statement to police properly admitted where defense cross-examined witness about details in testimony not contained in prior statement).

Accordingly, we overrule Wisdom's second issue.

## DENIAL OF MISTRIAL

■ Wisdom complains in his third issue that the court abused its discretion by denying his motion for mistrial after Kathleen made reference in her testimony to Wisdom being on probation. However, because Wisdom later testified about his DWI probation, any error in the denial of the motion for mistrial was rendered harmless.

The trial court granted Wisdom's motion in limine with regard to extraneous offenses. During Kathleen's testimony, she described her rocky relationship with Wisdom and explained that she finally decided to leave him because "I'd just had enough. I was—the verbal threats, you know, to punch me in the mouth if he wasn't on probation." Wisdom promptly objected that Kathleen's reference to his probation violated the motion in limine. Wisdom also moved for a mistrial. The court sustained the objection, instructed the jury to disregard Kathleen's "last statement," and denied the motion for mistrial.

When Wisdom testified in his own defense, he described his probation in more detail than Kathleen when describing how Kathleen and he came to know each other.[3] Because Wisdom testified to the same facts for which he had earlier sought a mistrial when Kathleen did, any error in the denial of the motion for mistrial was rendered harmless. *See Leday v. State,* 983 S.W.2d 713, 718–19 & nn. 6–8 (Tex. Crim.App.1998); *Haynes v. State,* 85 S.W.3d 855, 859 (Tex.App.-Waco 2002, pet. ref'd).

Accordingly, we overrule Wisdom's third issue.

We affirm the judgment.

Justice VANCE, dissents with a note.

Justice VANCE, dissenting.

The majority mis-applies the law of invited error. Estoppel arises from the doctrine of invited error only when there has been an "invitation" by the defendant to the court to commit error, the court does what was requested, and thereafter the defendant complains of that action. Here, Wisdom did not invite the court to deny the motion for a continuance. The withdrawal of the notice of an insanity defense was the only course available to Wisdom because he had been denied a due-process right of access to the only evidence that would support the defense. *See Lighteard v. State,* 982 S.W.2d 532 (Tex. App–San Antonio 1998, pet. ref'd). I would reverse the judgment.

---

**3.** According to Wisdom, he first met Kathleen the night he was arrested on the DWI charge which resulted in the probation at issue.