IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-03-00034-CR

 

Anthony Petruccelli,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 82nd District Court

Falls County, Texas

Trial Court # 7747

 



O p i n i o n



 








        Anthony
Petruccelli was convicted of the aggravated assault of his wife, Carol.  He was sentenced to seventy years'
confinement.  He argues on appeal that (1)
the trial court erred in admitting and publishing to the jury in the
guilt/innocence phase of the trial a "day in the life" video
depicting Carol's activities at a rehabilitation facility; (2) there is legally
insufficient evidence to prove Petruccelli's prior conviction; (3) there is legally
insufficient evidence to prove that his hands were deadly weapons; and (4) the
trial court erred in admitting prejudicial photographs of Carol in the
hospital.  We affirm his conviction.  However, because we find that the prior
conviction used for enhancement purposes is not a final conviction, we reverse
and remand for a new punishment hearing.

Background

          On
an August morning at 9:15am, Everett Platt, Petruccelli's neighbor, noticed that the rear
window of Petruccelli's truck was smashed. 
Platt stopped and asked Petruccelli what happened to his window.  Petruccelli stated that he threw a pipe into
the back of his truck, but it bounced up and hit the rear window.  Platt inquired about Petruccelli’s wife, Carol,
and he replied that "the bitch is in the bedroom passed out, drunk on the
bed."  He explained that he found Carol
drunk at a bar last night, brought her home, and that he may have "backhanded"
her.

          At
10:30am, Platt received a call from Petruccelli who was
worried that he could not wake Carol up. 
He said that she was making gurgling sounds and asked Platt what he
should do.  Platt told Petruccelli to
take Carol to a hospital.  At the same
time, the Falls county Sheriff's Department received a 9-1-1 call, but all that could be heard was a beeping
noise.  After tracing the call to Petruccelli,
Sheriff Jerry Cowin went to investigate. 
Petruccelli met Cowin at the front door and told him that everything was
alright, and that he had just misdialed. 
Cowin left.

          At
noon, Platt drove by Petruccelli's house.  He talked to Petruccelli who again expressed
concern over Carol's condition, that she continued to make noises, and that she
would not wake up.  Again, Platt told him
to take Carol to the hospital.  Petruccelli
finally agreed and asked Platt for his help in getting her to his truck.  Platt followed Petruccelli into the house
where he saw Carol laying half on the bed and half on the floor with bruises
covering her face, eyes, and shoulders.  As
they were carrying her limp body to the truck, Platt heard Petruccelli say
"Oh baby, look what I've done to you."  

          At
the hospital, Carol was listed in critical condition.  Her head and body were covered in
bruises.  She suffered severe head
trauma, causing her to have problems with her memory, her thought processes,
her speech, and her balance.  She also lost
most of her vision.  Her injuries
required that she be placed in a rehabilitation facility.

          While
at the hospital, Petruccelli told Platt, several medical professionals, and
police officers that he did or might have slapped Carol around a few times,
backhanded her, hit her, or accidentally hit her.  Subsequently, Petruccelli was charged with
aggravated assault.

          Finding
that he used his hands as a deadly weapon, a jury found Petruccelli guilty of
aggravated assault.  In the punishment
phase of the trial, it was shown that Petruccelli had a history of beating his
wife and that he had a prior felony conviction for assault and armed
robbery.  Petruccelli was sentenced to
seventy years' confinement.  

Admission
of Evidence - The Photographs

          Petruccelli
argues in his fourth issue that the trial court erred in admitting photographs
of Carol in the hospital because the probative value of the photographs is
substantially outweighed by the danger of unfair prejudice.

          We
review a court's decision to admit evidence for an abuse of discretion.  Chamberlain
v. State, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999); Gipson v. State, 82 S.W.3d 715, 721 (Tex. App.—Waco 2002, no pet.).  Under Rule 403, a trial court may exclude
relevant evidence "if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of the issues, or misleading the
jury, or by considerations of undue delay, or needless presentation of
cumulative evidence."  Tex. R. Evid. 403.  When conducting a Rule 403 analysis, we look
to four non-exclusive factors: (1) the probative value of the evidence; (2) the
potential to impress the jury in some irrational, yet indelible, way; (3) the
time needed to develop the evidence; and (4) the proponent's need for the
evidence.  Erazo v. State, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004) (citing Montgomery v. State, 810 S.W.2d 372, 389-90
(Tex. Crim. App. 1990)).

          Six
14 by 24 inch photographs and four 4 by 6 inch photographs were admitted into
evidence.  They all portray Carol unconscious
in her hospital bed, shortly after she was admitted.  Most portray her nude in various positions in
order to adequately display the extent of her injuries.  Bruises on her arms, breasts, back, buttocks,
thighs, and knees are clearly visible along with standard hospital
equipment.  Also, some pictures depict a
close-up of Carol's face showing bruising around her eyes, a cervical collar,
and various tubes entering her mouth and nose.

          The
State argues that the probative value of this evidence is not outweighed by its
unfairly prejudicial effect because proof of serious bodily injury is an
element of the offense of aggravated assault. 
Tex. Pen. Code Ann. § 22.02(a)(1)
(Vernon 2003).  While it is true that the
State has the burden to prove serious bodily injury beyond a reasonable doubt,
Petruccelli stipulated that there was serious bodily injury.  Therefore in this respect, the photographs
have limited probative value.

          However,
one of Petruccelli's defensive theories was that Carol received her injuries by
twice falling out of his moving truck. 
The State's expert witnesses emphatically denied that Carol's injuries
were of the sort typically received when a person falls out of a moving
vehicle.  They explained that if
Petruccelli's theory were true, Carol should have numerous cuts and abrasions
usually described as "road rash," and they referred to Carol's
hospital photographs to demonstrate the absence of road rash on Carol's
body.  Thus these photographs are
directly relevant and probative to counter the defense's theory, and the
State's need for this evidence is clear. 
See Montgomery, 810 S.W.2d at 387-88 (holding evidence is
admissible to rebut a defensive theory); Richards
v. State, 54 S.W.3d 348, 350 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (holding that
despite the defendant's stipulation to the cause of death, photographs were probative
to prove intent).

          Because
the photographs are genuinely helpful to the jury in making its decision, the
photographs are admissible unless the emotional and prejudicial impact of the
pictures substantially outweighs their helpfulness.  Erazo,
144 S.W.3d at 490.  We also consider
"the number of photographs, the size, whether they are in color or are
black and white, whether they are gruesome, whether any bodies are clothed or
naked, and whether the body has been altered by autopsy."  Id. at 489.  While
some of the photographs are fairly large, they number only ten, and none of
them portray blood or bleeding wounds. 
The photographs show a very bruised woman, but they are certainly not so
gruesome as to impress the jury in some irrational, yet indelible way.  Id.  Nor are
they so appalling that a juror of normal sensitivity would find it difficult
rationally deciding the critical issues of the case after viewing them.  See
Purtell v. State, 761 S.W.2d 360, 370-71 (Tex. Crim. App. 1988).  Therefore, we find that the trial court did
not abuse its discretion by admitting the photographs.  We overrule Petruccelli's fourth issue.




Admission
of Evidence - The Videotape

          In
his first issue, Petruccelli argues that the trial court erred by admitting in
evidence a videotape demonstrating the daily activities and treatment of Carol
at a rehabilitation facility. 
Specifically, Petruccelli argues that the videotape is victim-impact evidence
that is inadmissible during the guilt/innocence phase of a criminal trial.  Further, he argues that, even if found not to
be victim-impact evidence, the videotape is inadmissible because its probative
value is substantially outweighed by the danger of unfair prejudice.

          Before
analysis, we must begin with a description of the content of the
videotape.  The tape is approximately 35
minutes long and consists of three sections: Carol walking in the facility; Carol
with her memory specialist; and Carol with her occupational therapist.  

          In
the first section, Carol is seen walking through the rehabilitation facility, which
is decorated for Christmas.  She has
trouble with her balance, is using a walker, and has someone holding her arm to
guide her.  At one point, Carol asks
about a particular person named Wendy. 
The person guiding her replies that Wendy is holding the camera.  Carol attempts to find Wendy by walking
straight up to the camera until she brushes her nose against the lens, all the
while repeating with a smile, "I can't see you.  Where is she?"

          Next
Carol is seen sitting at a table next to a window with her memory specialist
sitting opposite her.  She is shown an
array of photographs of her children and her grandchildren.  Carol is asked to identify the people in the
pictures, but she cannot and frequently holds the pictures upside down while
guessing at what they show.  Frustrated, Carol
states that she will see the pictures better tomorrow.  When asked why, she replies, "I'm going
to pray tonight that God will let me see. 
God's going to help me see." 
Then Carol asks if she can take the pictures back to her room so that
she can see her kids in the daylight. 
The therapist answers that it is daylight, and points to the
window.  Carol replies, "No, it's
dark."  When asked, she does not
remember the year, day of the week, or month, though she was told this
information earlier.  Nor does she
remember how she received her injuries. 
At different times she states that she slipped and fell, or had a
stroke.

          Next
Carol is seen in her room at the facility. 
An occupational therapist leads Carol around the room by a belt at
Carol's waist.  She guides Carol in
counting the steps to her closet, the bathroom, and she teaches Carol how to
brush her teeth and put on her shoes.  At
one point, Carol attempts for approximately five minutes to put on one sock.  Unable to do so, she gives up and the
therapist puts the sock on for her.

          The
videotape was published to the jury in its entirety during the guilt/innocence
phase of the trial,[1]
and was later played to the jury without sound during the State's closing
argument while the State urged the jury to remember Carol when they debated
their verdict.

          Outside
of the context of homicide cases,[2]
victim-impact evidence is generally defined as evidence regarding "the
physical or psychological effect of the crime on the victims themselves."  Lane v.
State, 822 S.W.2d 35, 41 (Tex. Crim. App. 1991); see Matchett v. State,
941 S.W.2d 922, 931 (Tex. Crim. App. 1996); DeLaure
v. State, 102 S.W.3d 388, 403 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd); see also Tex. Code Crim. Proc. Ann. Art. 56.03 (Vernon 2002).

            Although the Court of Criminal Appeals has
held that a victim's medical records or a doctor's testimony concerning the
technical procedures required in caring for the victim are not victim-impact
evidence, we find that this evidence is distinguishable.  See
Garcia v. State, 126 S.W.3d 921, 929 (Tex. Crim. App. 2004); Mathis v. State, 67 S.W.3d 918, 928 (Tex. Crim. App. 2002).  The videotape does not consist solely of technical
medical information as communicated by a third party or as seen on paper.  Rather, it is a portrayal of not only Carol's
physical therapy, but also of her emotional and psychological state of mind as
she struggles with daily living.  While
we hesitate to label the videotape a "day in the life" video, usually
found in civil cases,[3]
we note that the video does give an impression of what Carol's day to day life
must be like.  The video portrays the
physical and emotional effect the crime of aggravated assault had upon Carol,
and therefore constitutes victim-impact evidence.  Nonetheless, regardless of its
characterization, we review this evidence under a Rule 403 analysis using the
non-exclusive factors referred to above. 
Erazo, 144 S.W.3d at 489.

          Victim-impact
evidence is generally not admissible in the guilt/innocence phase of the trial,
but can be admitted in the punishment phase when that evidence has some bearing
on the defendant's personal responsibility and moral culpability.  Salazar
v. State, 90 S.W.3d 330, 335 (Tex. Crim. App. 2002).  However, the characterization of this
evidence as victim-impact evidence does not necessarily preclude its admission
in the guilt/innocence phase, because this evidence may also be characterized
as evidence necessary to prove an element of the offense.  

          The
State argues that the videotape is necessary to prove serious bodily injury, an
element of the offense of aggravated assault, as stated above.  Tex.
Pen. Code § 22.02(a)(1).  Yet, as
explained, Petruccelli stipulated to serious bodily injury.  And while the photographs are probative to
rebut the defensive theory that Carol sustained her injuries while falling out
of a moving vehicle, the videotape does not rebut this theory or add anything
meaningful to the issue.  Therefore, the
probative value of the evidence is minimal. 
Also, having no need to prove serious bodily injury, and given the admission
of the photographs of Carol in the hospital, the State's need for the evidence
is slight.  The only possible reasons for
the admission is to prove serious bodily injury or to inflame the minds of the
jury.  The former was stipulated to, and
the latter is not acceptable under the Rules of Evidence if offered solely for that
reason.  Erazo, 144 S.W.3d at 489-90.

          Miller-El v. State, is directly on
point.  Miller-El v. State, 782 S.W.2d 892 (Tex. Crim. App. 1990).  In Miller-El,
the victim was shot in the spinal cord by the defendant.  Id. at 894.  During
the punishment phase of the trial, the victim's doctor testified concerning the
"special needs" the victim would require for the rest of his life due
to the seriousness of his injury.  Id.  The
State argued that this evidence was admissible in the guilt/innocence phase
because it was probative of the defendant's intent to kill the victim, and the
nature of the victim's injuries.  Id. at 895.  Therefore,
the State argued, the evidence should be admissible in the punishment phase
also.  Id.  The
Court of Criminal Appeals disagreed. 
They found that while the bare facts of the victim's paralysis was
admissible in the guilt/innocence phase, "the victim's future hardship as
a paraplegic [did not have] any tendency to make more or less probable the
existence of any fact of consequence at the guilt stage of trial."  Id.

          The
videotape in question is highly prejudicial. 
And, while relevant and probative in the punishment phase of the trial,
its contains no information that would have any tendency to make more or less
probable the existence of any fact of consequence at the guilt stage of
trial.  Therefore the videotape was inadmissible
in the guilt/innocence phase of the trial.

          Further,
we note a point of concern.  When this
type of evidence is being offered in the punishment phase, judges are cautioned
to place appropriate limits on the amount, kind, and source of victim-impact
evidence.  Salazar, 90 S.W.3d at 336 (citing Mosley v. State, 983 S.W.2d 249, 262-63 (Tex. Crim. App.
1998)).  The Court of Criminal Appeals
requires heightened judicial supervision of this type of evidence in the
punishment phase.  Salazar, 90 S.W.3d at 336.  Most
assuredly, the same supervision applies in the guilt/innocence phase.  We also find it disconcerting that there is
no indication that the trial court viewed the videotape before admitting it
into evidence.  "It is equally
difficult for a trial judge to weigh the probative value against the
potentially unfair prejudice of a particular item of evidence without first
reviewing it."  Id. at 336-37.

          For
the foregoing reasons, we find that the trial court erred by admitting the
videotape in evidence during the guilt/innocence phase of trial.  

Harm Analysis

          Having
found error, we consider the harm, if any, caused by the admission of the tape.  We will disregard any error that does not
affect a substantial right of the defendant. 
Tex. R. App. P. 44.2(b); Haynes v. State, 85 S.W.3d 855, 859 n. 4
(Tex. App.—Waco 2002, pet. ref'd). 
"A substantial right is affected when the error had a substantial
and injurious effect or influence in determining the jury's verdict."  King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253, 90 L. Ed. 1557 (1946)).  We do not reverse if, "after examining
the record as [a] whole, [we have] fair assurance that the error did not
influence the jury, or had but a slight effect."  Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); see also Schutz v. State,
63 S.W.3d 442, 444 (Tex. Crim. App. 2001). 
The reviewing court should consider everything in the record, including
all the evidence admitted, the arguments, and voir dire.  Motilla
v. State, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002).  The strength of the evidence of guilt,
especially if it is overwhelming, is a factor to be considered.  Id. at 357-58; Haynes,
85 S.W.3d at 859 n. 4.  However, if there
are "grave doubts" about whether the error did not affect the
outcome, then the error is treated as if it did effect the outcome.  Thomas
v. State, 137 S.W.3d 792, 796 (Tex. App.—Waco 2004, no pet.) (citing Fowler v. State, 958 S.W.2d 853, 865
(Tex. App.—Waco 1997), aff'd, 991
S.W.2d 258 (Tex. Crim. App. 1999)).

          After
examining the evidence as a whole, we conclude that the admission of the
videotape had only a slight effect on the jury. 
Johnson, 967 S.W.2d at 417; Castillo, 910 S.W.2d at 127-28; Garcia, 827 S.W.2d at 30.  The record reveals numerous admissions from
Petruccelli, including a signed statement, that he hit Carol.  This, along with the medical testimony that
Carol's injuries were caused by multiple impacts consistent with being beaten,
is more than enough evidence of guilt to render the erroneous admission of the
videotape harmless.  Motilla, 78 S.W.3d at 357-58. 
While we note that the State emphasized the videotape during closing
argument, it was for a short period of time and without audio.  Though a close question, we cannot say that
we are in "grave doubt" about whether the error affected the outcome.  Thomas,
137 S.W.3d at 796.  Given the strength of
the evidence of guilt, we find the erroneous admission of the videotape
harmless.  Motilla, 78 S.W.3d at 357-58. 
Accordingly, we overrule Petruccelli's first issue.

 Insufficiency of the Evidence - Deadly
Weapon

          Petruccelli
argues in his third issue that there is factually insufficient evidence to
prove that he used or exhibited his hands as deadly weapons capable of causing
death or serious bodily injury.

          In
conducting a factual sufficiency review, we "consider[ ] all of the
evidence in a neutral light" and determine whether the factfinder was
"rationally justified in finding guilt beyond a reasonable
doubt."  Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004); Davis v.
State, 147 S.W.3d 554, 556
(Tex. App.—Waco 2004, no
pet.).

          [T]here
are two ways in which the evidence may be [factually] insufficient.  First, when considered by itself, evidence
supporting the verdict may be too weak to support the finding of guilt beyond a
reasonable doubt.  Second, there may be
both evidence supporting the verdict and evidence contrary to the verdict.  Weighing all the evidence under this
balancing scale, the contrary evidence may be strong enough that the
beyond-a-reasonable-doubt standard could not have been met.

 

Zuniga, 144 S.W.3d at 484-85.

          A
person commits the felony offense of aggravated assault if he commits assault
and (1) causes serious bodily injury to another, or (2) uses or exhibits a
deadly weapon during the commission of the assault.  Tex.
Pen. Code Ann. § 22.02(a) (Vernon 2003). 
A deadly weapon is anything manifestly designed, made, or adapted for
the purposes of inflicting serious bodily injury or anything that, in the
manner of its use or intended use, is capable of causing death or serious
bodily injury.  Tex. Pen. Code Ann. § 1.07(a)(17)(A), (B) (Vernon 2003).  

          Petruccelli's
indictment alleged that his hands constituted deadly weapons.  Body parts, such as hands and knees, may be
deadly weapons based on their manner of use or intended use and their capacity
to produce death or serious bodily injury. 
Turner v. State, 664 S.W.2d
86, 90 (Tex. Crim. App. [Panel Op.] 1983); Vela
v. State, No. 13-03-102-CR, 2004 WL 1795314, *8 (Tex. App.—Corpus Christi 2004, no pet.).  To determine whether something is a deadly
weapon, the jury may consider all the surrounding facts, including the
defendant's words.  Blain v. State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); Vela, 2004 WL 1795314 at *8.  The State does not have to prove that the
complainant actually sustained serious bodily injury for the alleged weapon to
be a deadly weapon.  Jefferson v.
State, 974 S.W.2d 887, 892
(Tex. App.—Austin 1998, no pet.).  The
State need prove only that the hands were capable of causing serious bodily
injury in the way they were used or intended to be used.  Hill v.
State, 913 S.W.2d 581, 584 (Tex. Crim. App. 1996); Jefferson, 974 S.W.2d at 892; Vela, 2004 WL 1795314 at *8.

          Petruccelli
made numerous admissions that he hit Carol. 
This evidence, coupled with medical testimony that Carol's injuries were
consistent with being beaten multiple times with someone's hands, constitutes
factually sufficient evidence.  Vela, 2004 WL 1795314 at *8.  Looking at the evidence in a neutral
viewpoint, we find that the jury was rationally justified in finding that
Petruccelli used or exhibited his hands as deadly weapons.  Zuniga,
144 S.W.3d at 484.  Accordingly, we
overrule Petruccelli's third issue.




Insufficiency
of the Evidence - Prior Conviction

          Petruccelli
argues in his second issue that there is legally insufficient evidence to prove
his prior conviction because the conviction was not final.[4]

          In
reviewing the legal sufficiency of the evidence, we view all the evidence in
the light most favorable to the verdict. 
Cardenas v.
State, 30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000).  The critical inquiry is whether, after so
viewing the evidence, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Id.; McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

          The
trial court admitted a penitentiary packet from the Commonwealth of Massachusetts, but it contained no judgment or sentence.  The packet is accompanied by an affidavit that
states that the documents pertain to an Anthony Petruccelli with the same date
of birth as Appellant Petruccelli.  It
contains two pictures of Petruccelli, identifying marks, and fingerprints that
were later identified by the State's expert witness as Petruccelli's
fingerprints.  The packet also includes a
"complaint of indictment data" stating that Petruccelli was charged
with assault and armed robbery, and a warrant for commitment stating that
Petruccelli was convicted of armed robbery and assault and is to be committed
to ten years' confinement.  Also, a
Certificate of Parole is included which shows that Petruccelli was paroled by the
Commonwealth of Massachusetts Parole Board.

          When
an out-of-state penitentiary packet has been introduced as evidence of a prior
criminal record in the punishment phase, the State must establish, either by
proof or request, that the trial judge took judicial notice of what our sister
state considers sufficient documentary proof of a final conviction.  See
Langston v. State, 776 S.W.2d 586, 587-88 (Tex. Crim. App. 1989).  In this case, the State did not do so.  Therefore, in the absence of proof of the laws
of the Massachusetts, we will presume that the law is the same as
that of Texas.  Id.

          The
State must prove beyond a reasonable doubt prior convictions alleged for the
purpose of enhancement of punishment.  Zimmer v. State, 989 S.W.2d 48, 51 (Tex.
App.—San Antonio 1998, pet. ref'd).  Our
case law is clear that "before a conviction may be relied upon for
enhancement in a later case, such prior conviction must be final."  Beal v.
State, 91 S.W.3d 794, 796 (Tex. Crim. App. 2002).  In order for a conviction to be considered
final, a penitentiary packet must contain a properly certified judgment and
sentence.  Langston, 776 S.W.2d at 587-88. 
"[W]hen the State offers into evidence a certified copy of a
judgment and sentence, it has made a prima facie case that the conviction
reflected within that judgment and sentence is a final conviction worthy of
respect."  Jones v. State, 77 S.W.3d 819, 822-23 (Tex. Crim. App. 2002).  In this case, a final judgment was absent,
and though the pen packet contains sufficient identifying information
connecting Petruccelli to the conviction, this does not in itself make the
conviction final, nor does it absolve a court from finding so.  See Beal,
91 S.W.3d at 796.  Therefore, because
there is no evidence that the conviction was final, no rational trier of fact
would have concluded beyond a reasonable doubt that the prior conviction was
true.  Beal v. State, 109 S.W.3d 759, 760 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding that
because prior conviction is not final there is no evidence to support a finding
of true to the enhancement paragraph); Fluellen
v. State, 104 S.W.3d 152, 168  (Tex.
App.—Texarkana 2003, no pet.); but see
Lavinge
v. State, 64 S.W.3d
673, 676-77 (Tex. App.—Houston [1st Dist.] 2001, no
pet.). 

          A sentence that is
outside the maximum or minimum range of punishment is unauthorized by law and
therefore, illegal.  Mizell v. State, 199 S.W.3d 804, 806 (Tex. Crim. App.
2003).  Without enhancement the maximum
punishment for the offense of aggravated assault is twenty years'
confinement.  Tex. Pen. Code Ann. § 12.33(a) (Vernon 2003).  Petruccelli was sentenced to seventy years'
confinement.  Accordingly, we sustain Petruccelli's second
issue.

Conclusion

          Having
overruled Petruccelli's first, third, and fourth issues, we affirm his
conviction.  However, because we
sustained Petruccelli's second issue regarding the enhancement allegation, we
reverse the trial court's judgment on punishment and remand to the trial court
for a new punishment hearing.  See Tex.
Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp. 2004).

 

 

 

                                                                   FELIPE
REYNA

                                                                   Justice

Before Chief Justice
Gray,

          Justice Vance, and 

          Justice Reyna

          (Chief Justice Gray dissenting)

Affirmed in part, reversed
and remanded in part

Opinion delivered and
filed March 9, 2005

Publish

[CR25]          











    [1]       During a hearing on the admission of the
videotape, Petruccelli's counsel asked that the tape be published to the jury
without sound, and the State agreed, yet the trial court ruled only that the
tape be admitted.  However, it is
apparent from the record that the tape was played with sound because the
State's witness was asked to identify for the jury the voices heard on the
videotape.  Furthermore, when the tape
was played for the jury at closing argument, the reporter's record notes that
it was played without the audio portion. 
There is no such indication in the record when the tape was first
published.

 





    [2]       In homicide cases, victim-impact evidence
is traditionally defined as "evidence concerning the effect that the
victim's death will have on others, particularly the victim's family
members."  Mathis v. State, 67 S.W.3d 918, 928 (Tex. Crim. App. 2002).





    [3]       See
Wal-Mart Stores, Inc. v. Hoke, No. 14-99-00503-CV, 2001 WL 931658, *13 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (not
designated for publication); Pittsburg
Corning Corp., v. Walters, 1 S.W.3d 759, 772-73 (Tex. App.—Corpus Christi
1999, pet. denied); Apache Ready Mix Co.,
Inc. v. Creed, 653 S.W.2d 79, 83-84 (Tex. App.—San Antonio 1983, writ
dism'd) .





    [4]       Though Petruccelli argues that the trial
court erred in admitting the prior conviction because it was not final, we
interpret this issue as including the argument that there is no evidence to
support the enhancement allegation.  See Tex.
R. App. P. 38.1(e), 38.9.