NO.
12-04-00045-CR

 

                         IN THE COURT OF APPEALS 

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER,
TEXAS

RICHARD
E. THORNTON,                             '     APPEAL
FROM THE 145TH

APPELLANT

 

V.                                                                         '     JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE                                                        '     NACOGDOCHES
COUNTY, TEXAS

                                                                                                                                                      

                                                      MEMORANDUM
OPINION

Appellant
Richard E. Thornton was convicted of aggravated assault, sentenced to
ninety-nine years of imprisonment, and assessed a $10,000.00 fine.  Appellant raises five issues for review.[1]  We affirm.

 

Background

On
July 25, 2003, Appellant was indicted for the offense of aggravated
assault.  The first count of the
indictment specifically alleged that on or about May 25, 2003, Appellant

 

did then and there intentionally, knowingly, or
recklessly cause bodily injury to Martha Rocka by choking her, and [Appellant]
did then and there use or exhibit a deadly weapon, to-wit: an electrical cord,
during the commission of said assault.

 

 

The second count of the
indictment alleged that on or about May 25, 2003, Appellant   

 








did then and there intentionally or knowingly threaten
Martha Rocka with imminent bodily injury and did then and there use or exhibit
a deadly weapon, to-wit: a knife, during the commission of said assault. . . .

 

 

The indictment
also alleged that on April 23, 1984, Appellant was convicted of the felony
offense of aggravated sexual abuse of a child in the 176th Judicial District
Court of Harris County. 

On
September 11, the deputy district clerk of Nacogdoches County issued a criminal
subpoena for Martha Rocka to appear in court on November 10, 2003 to testify as
a witness at Appellant=s
trial.  The officer=s return on the subpoena is blank,
indicating that it was never served on Rocka. 

On
October 24, Appellant filed a AMotion
for Notice of State=s
Intention to Use Evidence of Extraneous Offenses at Trial,@ asking the trial court to order the
State to give him notice of its intent to use evidence of any of Appellant=s 1) prior crimes, wrongs, or acts
and  2) prior convictions used to impeach
Appellant=s
credibility, including sexual and assaultive offenses.  The trial court granted Appellant=s motion, and the State complied with
the order on October 30.  That same day,
the State filed a motion to amend the first count of the indictment, asking the
trial court to change the deadly weapon from Aan
electrical cord@ to Ahis hands.@  The State did not ask for any other
amendments to the indictment.  The trial
court granted the State=s
motion on October 31. 

Appellant=s case went to trial on November
10.  At the conclusion of the trial, the
jury found Appellant Aguilty@ of aggravated assault.  Following the punishment phase of the trial,
the jury sentenced Appellant to ninety-nine years of imprisonment and assessed
a $10,000.00 fine. 

Appellant
filed a motion for new trial, which was denied. 
Appellant timely filed a notice of appeal and now challenges his
conviction in five issues.[2]

 

Denial of Appellant=s Right to Confront His Accuser








The
record reflects that Rocka testified at the punishment phase of the trial
only.  Although Rocka did not testify
during the guilt/innocence phase, the State elicited testimony from four
witnesses that Rocka spoke to about the assault that took place on May 25.  In his first issue, Appellant contends that
the trial court violated his Sixth Amendment right to confront his accuser
during the guilt/innocence phase of the trial when it allowed, under the
excited utterance exception to the hearsay rule, four of the State=s witnesses to testify as to what Rocka
told them on May 25, 2003.  See U.S. Const. amends. VI, XIV; Tex. R. Evid. 803(2).  Specifically, Appellant complains that the
trial court erred by allowing testimony from Rita Butler, Nacogdoches County
Sheriff=s
Deputies Shane Johnson and Kerry Williamson, and Timothy Hooper.

Standard
of Review

We
review a trial court=s
rulings on whether to admit or exclude evidence for an abuse of
discretion.  Montgomery v. State,
810 S.W.2d 372, 390-91 (Tex. Crim. App. 1991) (op. on reh=g). 
If the court=s ruling
is within the zone of reasonable disagreement, we will not disturb it on
appeal.  Metts v. State, 22
S.W.3d 544, 550 (Tex. App.BFort
Worth 2000, pet. ref=d).  If we can uphold the trial court=s decision on any theory applicable to
the case, we will do so.  Id.  In considering this constitutional issue, we
review the trial court=s
ruling de novo.  Muttoni v. State,
25 S.W.3d 300, 304 (Tex. App.BAustin
2000, no pet.).

Applicable
Law

The
accused in a criminal case has a constitutional right to confront and cross
examine the witnesses against him.  U.S. Const. amends. VI, XIV.  The admission of hearsay evidence against a
criminal defendant implicates the Confrontation Clause because the defendant is
not afforded the opportunity to confront the out of court declarant and cross
examine him or her regarding any testimonial statements.  U.S.
Const. amend. VI; Crawford v. Washington, 541 U.S. 36, 41,
124 S. Ct. 1354, 1359, 158 L. Ed. 2d 177 (2004); Wall v. State,
2006 WL 119575, at *3 (Tex. Crim. App. Jan. 18, 2006); Key v. State,
173 S.W.3d 72, 74 (Tex. App.BTyler
2005, pet. ref=d).  To preserve error on Confrontation Clause
grounds, an objection must be made at trial as soon as the basis for such
objection becomes apparent.  Wright
v. State, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000).  A hearsay objection does not preserve error
on Confrontation Clause grounds.  Paredes
v. State, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004). 

Testimony
of Rita Butler








Butler
stated that on May 25, she was in her front yard and saw a naked female Acoming over@
the four foot high fence that surrounds her property.  After the female climbed over the fence, she
ran up to Butler and began mumbling. 
Both of the female=s
eyes were black and one was swollen shut. 
The female asked to come into Butler=s
house to use the phone to call the police. 
Butler did not know the female, but she later told Butler that her name
was Martha Rocka.  When the State asked
Butler if the female told her her name, Appellant=s
counsel objected on the basis that the statement was hearsay.  The State argued that the statement was one
of identification and was also an excited utterance.  The trial court overruled the objection.

 Butler further testified that Rocka was Aterrified@
and Afrightened.@ 
Butler stated that Rocka told her she was scared because Ashe [had] been beaten all night.@ 
At this time, Appellant renewed his objection to any statements Rocka
made to Butler on the basis that they were hearsay and that Butler=s testimony violated Athe Confrontation Clause under the
Constitution.@  The trial court overruled his objections and
allowed him Aa running
objection for any statements made by Martha Rocka@
to Butler, but did not specify the grounds.  Butler stated
that Rocka told her ARicky
Thornton@ was the
person who Ahad beat
her all night@ and that
Rocka told her she Agot away@ when Appellant had gone to sleep.  Rocka also told Butler that Appellant Ahad done some things to her breast and
vagina.@  When asked if Rocka told her whether
Appellant had restrained her in any way, Butler testified that Rocka said
Appellant Ahad tied
her up.@ 

Testimony
of Timothy Hooper

Hooper
stated that he is a full time Emergency Medical Technician for Nacogdoches
County Memorial Hospital.  At 8:34 a.m.
on May 25, 2003, he and another EMT, Bill Kopper, responded to a call in
Douglas, Texas in Nacogdoches County regarding an injured person.  When they arrived at the scene at 8:52 a.m.,
Kopper got out of the ambulance first while Hooper stayed behind Ato check on the radio.@ 
Hooper then exited the ambulance and went around the back of Butler=s house, where he saw Kopper talking to
Aa lady who appeared to [have been]
beaten.@  Hooper noticed that the woman had two black
eyes, a swollen nose, dried blood on her face, and Aa
lot of bruising around her neck@
and wrists.  When the State asked what
Rocka had told him, Hooper stated that she said she had Abeen
beaten throughout the prior evening, and tied up.@  Appellant=s
counsel lodged a global  Ahearsay@
objection to the statement Rocka made to Hooper about what had happened to
her.  This objection was overruled. 








Rocka
also told Hooper that Appellant poured hot candle wax on her body Ain particular areas@ and that the bruising around her neck
occurred as a result of Appellant=s
choking her Aduring
the beatings.@  The trial court granted Appellant a running
objection based on hearsay as to Hooper=s
testimony regarding Rocka=s
statements about being choked.  Rocka
further related to Hooper that Appellant choked her with his hands Anumerous times,@
which resulted in her passing out Anumerous
times.@ 

Testimony
of Deputy Shane Johnson

Shane
Johnson, a Patrol Deputy with the Nacogdoches County Sheriff=s Department, testified that at 8:31
a.m. on May 25, 2003, he was called to a location in Douglas, Texas, where he Adiscovered a lady that had been
assaulted.@  He first talked to Butler and then began
talking to Rocka.  When he saw Rocka, he
noticed that her face had bruising and swelling and that one of her eyes was
swollen completely shut.  Rocka=s other eye was Apartially
closed.@  Johnson also noticed that Rocka had Amarks and redness around her neck area,
and also some more bruising on her forearms.@  He stated that Rocka was Avery upset,@
Adistraught,@
and Avery
timid,@ Akind of like an abused animal.@  


When
asked what Rocka was able to tell him, Johnson said that she told him ARicky Thornton had beat her up and had
choked her@ several
times.  Appellant=s
counsel objected to this question on the basis that it asked for a hearsay
response.  The State contended that Rocka=s statement was an excited utterance
and was excluded from the hearsay rule because it was made  before the paramedics arrived.  The trial court overruled the objection, but
gave Appellant a running hearsay objection to the remainder of Johnson=s testimony. 

Johnson
further stated that after he obtained Rocka=s
information, and after the paramedics had taken her to the hospital, he and
Deputy Kerry Williamson went to Appellant=s
home and arrested him.  They went to
Appellant=s house
because Rocka told them that after Aher
attack, she, during the morning, was able to get away from the Thornton
residence and fle[e].@  Johnson later obtained a search warrant for
Appellant=s
residence and surroundings and searched a Abox
van@ on Appellant=s
premises, which Ais where
the alleged assault took place.@  








With
regard to some flashlights that were found in the van when the warrant was
executed, Johnson testified that before the medical personnel took Rocka to the
hospital, she told him a red flashlight had been used to penetrate her
vagina.  When asked who did this to her,
Rocka replied, ARicky
Thornton.@  Appellant raised a hearsay objection after
Johnson said ARicky
Thornton.@  The trial court overruled the objection.  On redirect examination, Johnson stated that
Rocka also told him that she had been whipped and beaten with an extension
cord.  He also said he did not see
anything about Rocka that led him to believe that she was intoxicated as a
result of ingesting an illegal substance. 

Testimony
of Kerry Williamson

Kerry
Williamson, a deputy sheriff with the Nacogdoches County Sheriff=s Office, stated that when he and
Johnson arrived at the Butler residence on May 25, Butler told him that Ashe had a lady sitting on her back
porch that had been assaulted.@  When he saw the woman, who later identified
herself as Rocka, he noticed that she Ahad
been beaten severely.  She was very
traumatized.@  He saw that she was Aterrified,
shaking@ and was Anude, but she was covered with
something that [Butler] had given her.@  Rocka was Ajust
very emotional, crying, [and] scared.@  

When
asked what Rocka told him, Williamson said she told him that over the course of
the night, she had Abeen
beaten several times, choked, tied up, hanged with a cord, [and had] hot wax
poured in her eyes, her breasts, and her vagina.@  Rocka also told him that she had been Aviolated with a flashlight,@ meaning that Athe
flashlight was used to penetrate her vagina.@  She further stated that she had been Achoked manually with hands, and also a
ligature or a cord, some type of cord.@

Appellant=s counsel did not lodge any hearsay or
Confrontation Clause objections to Williamson=s
testimony. 

Analysis








The
Texas Court of Criminal Appeals recently addressed post-Crawford
Confrontation Clause arguments in the Wall decision
and gave courts guidance as how to determine whether statements are excited
utterances or testimonial in nature.  See Wall,
2006 WL 119575, at *3.  However, in the
instant case, we need not address the issue. 
Although Appellant objected to one portion of Butler=s testimony on the basis that it
violated the Confrontation Clause, his global Ahearsay@ objections to the remainder of Butler=s testimony and to the testimonies of
Hooper and Johnson did not preserve error on Confrontation Clause grounds.  See Paredes, 129 S.W.3d
at 535.  Because Appellant=s Confrontation Clause issue on appeal
does not comport with the global hearsay objections made at trial, he has
waived error.  See Banda v. State,
890 S.W.2d 42, 62 (Tex. Crim. App. 1994). 
With regard to the running hearsay and Confrontation Clause objection to
one portion of Butler=s
testimony, Appellant has waived any error regarding this testimony because the
same facts were elicited through the other three witnesses without
Confrontation Clause objections. See Rogers v. State,
853 S.W.2d 29, 35 (Tex. Crim. App. 1993) (any error regarding improperly
admitted evidence is waived if that same evidence is later admitted without
objection).   Appellant also waived any
hearsay or Confrontation Clause challenges to Williamson=s
testimony by failing to lodge any objections to Williamson=s statements of what Rocka had told him
about Appellant=s
actions.  See Tex. R. App. P. 33.1; Wright,
28 S.W.3d at 536 (holding any error under Confrontation Clause waived because
of failure to object at trial). 
Accordingly, Appellant=s
first issue is overruled.

 

Legal Sufficiency of the Evidence

In
his second issue, Appellant contends that the evidence adduced at trial is
legally insufficient to sustain his conviction for aggravated assault because
the State did not prove that he used his hands in a manner that could have
caused death or serious bodily injury.

Standard of
Review

In
a legal sufficiency review, we view all of the evidence in a light most
favorable to the verdict and then determine whether a rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt.  Ross v. State, 133 S.W.3d 618,
620 (Tex. Crim. App. 2004) (citing Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2879, 61 L. Ed. 2d 560, 573 (1979)).  Applicable Law








A
person commits the offense of aggravated assault if the person commits an
assault on another person and 1) causes serious bodily injury to that person or
2) uses or exhibits a deadly weapon during the commission of the assault.  Tex.
Pen. Code Ann. '
22.02(a) (Vernon Supp.  2005).[3]  Serious bodily injury is defined as bodily
injury that 1) creates a substantial risk of death, 2) causes death, 3) causes
serious permanent disfigurement, or 4) causes protracted loss or impairment of
the function of any bodily member or organ. 
Tex. Pen. Code Ann. ' 1.07(a)(46) (Vernon Supp. 2005).  A deadly weapon is 1) a firearm or anything
manifestly designed, made, or adapted for the purpose of inflicting death or
serious bodily injury or 2) anything that in the manner of its use is capable
of causing death or serious bodily injury. 
Tex. Pen. Code Ann. ' 1.07(a)(17) (Vernon Supp. 2005).        

The
first count of the indictment alleged that Appellant's hands constituted a
deadly weapon.  Body parts, such as hands
and knees, may be deadly weapons based on their manner of use or intended use
and their capacity to produce death or serious bodily injury.  Turner v. State, 664 S.W.2d 86, 90
(Tex. Crim. App. [Panel Op.] 1983); Petruccelli v. State, 174
S.W.3d 761, 770 (Tex. App.BWaco
2005, no pet.).  To determine whether
something is a deadly weapon, the jury may consider all the surrounding facts,
including the defendant's words and whether the victim feared death or serious
bodily injury.  English v. State,
647 S.W.2d 667, 669 (Tex. Crim. App. 1983); Blain v. State,
647 S.W.2d 293, 294 (Tex. Crim. App. 1983); Denham v. State, 574
S.W.2d 129, 131 (Tex. Crim. App. 1978). 
The State does not have to prove that the complainant actually sustained
serious bodily injuries.  Jefferson
v. State, 974 S.W.2d 887, 892 (Tex. App.BAustin
1998, no pet.); Clark v. State, 886 S.W.2d 844, 845 (Tex. App.BEastland 1994, no pet.).  The State must only prove that the hands were
capable of causing serious bodily injury in the way they were used or
intended to be used.  Hill v. State,
913 S.W.2d 581, 584 (Tex. Crim. App. 1996); Jefferson, 974 S.W.2d
at 892 (emphasis added).

Analysis








Hooper,
Johnson, and Williamson all testified that Rocka stated Appellant choked and
beat her with his hands.  Hooper, an
emergency medical technician, stated that when a person chokes another person
with his hands, the person=s
hands are capable of causing serious bodily injury or death.  He said that when a person is choked, the
blood circulation is cut off to the brain, which causes a person to pass
out.  As an EMT, he has seen and
investigated cases where a person was killed by being choked.  Bill Koppel, the paramedic who arrived at the
scene with Hooper, testified that when a person is choked, the trachea can be
crushed, which can shut off the airway and the air supply to the lungs.  Alternatively, the trachea can be squeezed
long enough to cut off the air supply to the person, which can cause
death.  Based on this testimony, we hold
the jury could have rationally concluded that Appellant's hands, in the manner
of their use or intended use, were capable of causing serious bodily injury.
Appellant=s second
issue is overruled.

 

Fatal Variance in Proof and Indictment

In
his third issue, Appellant contends that his due process rights were violated
because of a 

fatal variance
in the proof adduced at trial and the allegations in the indictment.  Specifically, Appellant argues that the State
proved he committed, in addition to aggravated assault, a sexual assault by
penetrating Rocka=s vagina
with a flashlight.  Since sexual assault
and aggravated assault are different offenses, Appellant contends that the
indictment fatally varied from the proof adduced at trial.

As
a general rule, an indictment that mirrors the language of the statute creating
and defining the offense charged will be sufficient.  Boney v. State, 572 S.W.2d 529,
532 (Tex. Crim. App.1978).  A variance
occurs when there is a discrepancy between the allegations in the charging
instrument and the proof at trial.  Gollihar
v. State, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001).  In a variance situation, the State has proven
the defendant guilty of a crime but has proven its commission in a manner that
varies from the allegations in the charging instrument.  Id. 

In
the case before us, the State's indictment mirrored the language of the statute
that defines the offense of aggravated assault. 
The State also introduced evidence showing that Appellant committed
aggravated assault against Martha Rocka in the manner alleged in the
indictment. Appellant's variance claim is misplaced. Although more information
about the events was elicited at trial than was alleged in the indictment, this
additional testimony did not create a variance in the allegations in the
indictment and the proof elicited at trial. 
Appellant=s third
issue is overruled.

 

State=s Failure to Disclose Favorable Evidence








In
his fourth issue, Appellant maintains that the State violated his due process
rights by failing to disclose exculpatory evidence, namely, an affidavit Rocka
filed on August 19, 2003.  See Brady
v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215
(1963).  The affidavit stated, in
pertinent part, that 1) Appellant=s
conduct was performed with Rocka=s
consent because she and Appellant enjoyed masochistic sex, 2) Rocka was Anot in her right mind@ because she Awas
on drugs for three days@
prior to the time she escaped from Appellant=s
residence, and 3) Rocka was Aasking
the State to drop the assault and kidnaping [sic] charges against Richard
Thornton because none of it is true.@  The affidavit was signed by Martha Rocka and
was notarized by a notary public on August 18. 


A
Brady violation occurs when the State suppresses, willfully or
inadvertently, evidence favorable to a defendant.  Harm v. State, 2006 WL 168374,
at *2 (Tex. Crim. App. Jan. 25, 2006). There can be no Brady violation
without suppression of favorable evidence. 
Id.  The State's
duty to reveal Brady material to the defense attaches when the
information comes into the State's possession, whether or not the defense
requested the information.  Thomas,
841 S.W.2d at 407. However, the State is not required to seek out exculpatory
evidence independently on a defendant=s
behalf or furnish a defendant with exculpatory or mitigating evidence that is
fully accessible to the defendant from other sources.  Jackson v. State, 552 S.W.2d
798, 804 (Tex. Crim. App.1976).

The
record in this case demonstrates that Rocka=s
affidavit was filed in the Nacogdoches County District Clerk=s Office on August 19, 2003.  There is no evidence in the record to show
that the State ever came into possession of Rocka=s
affidavit.  Both the State and Appellant
had access to the affidavit because it was filed in the district clerk=s office.  Appellant presents us with no proof to
demonstrate that the State suppressed any evidence favorable to him; therefore,
we cannot conclude that a Brady violation occurred.  Appellant=s
fourth issue is overruled.

 

Denial of Effective Assistance of Counsel

In
his fifth and final issue, Appellant argues that his counsel=s Afailure
to investigate and interview the complainant and make the proper objections at
the proper time fell below an objective standard of reasonableness and compels
a finding of ineffectiveness.@  Specifically, Appellant complains that his
counsel was ineffective because he failed to 1) interview Rocka before trial
and  2) object when the State did not
prove that Rocka sustained serious bodily injury.  

Standard
of Review








Claims
of ineffective assistance of counsel are evaluated under the two‑step
analysis articulated in Strickland v. Washington, 466 U.S. 668,
688, 104 S. Ct. 2052, 2065, 80 L. Ed. 674 (1984).  The first step requires the appellant to
demonstrate that trial counsel's representation fell below an objective
standard of reasonableness under prevailing professional norms.  See Strickland, 466 U.S.
at 688, 104 S.Ct. at 2065.  To satisfy
this step, the appellant must identify the acts or omissions of counsel alleged
to be ineffective assistance and affirmatively prove that they fell below the
professional norm of reasonableness.  See
McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).  The reviewing court will not find
ineffectiveness by isolating any portion of trial counsel=s representation, but will judge the
claim based on the totality of the representation.  See Strickland, 466 U.S.
at 695, 104 S.Ct. at 2069.

To
satisfy the Strickland standard, the appellant is also required
to show prejudice from the deficient performance of his attorney.  See Hernandez v. State,
988 S.W.2d 770, 772 (Tex. Crim. App. 1999). 
To establish prejudice, an appellant must prove that but for counsel's
deficient performance, the result of the proceeding would have been
different.  See Strickland,
466 U.S. at 694, 104 S. Ct. at 2068. 
Before we will sustain an ineffective assistance of counsel claim related
to a failure to object, the appellant must show that the trial court would have
erred had it overruled such an objection. 
Vaughn v. State, 931 S.W.2d 564, 566 (Tex. Crim. App.
1996). 

In
any case considering the issue of ineffective assistance of counsel, we begin
with the strong presumption that counsel was effective.  See Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
We must presume counsel=s
actions and decisions were reasonably professional and were motivated by sound
trial strategy.  See id.  Appellant has the burden of rebutting this
presumption by presenting evidence illustrating why his trial counsel did what
he did.  See id.  Appellant cannot meet this burden if the
record does not affirmatively support the claim.  See Jackson v. State, 973 S.W.2d
954, 955 (Tex. Crim. App. 1998) (inadequate record on direct appeal to evaluate
whether trial counsel provided ineffective assistance); Phetvongkham v.
State, 841 S.W.2d 928, 932 (Tex. App.BCorpus
Christi 1992, pet. ref'd, untimely filed) (inadequate record to evaluate
ineffective assistance claim).  A record
that specifically focuses on the conduct of trial counsel is necessary for a
proper evaluation of an ineffectiveness claim. 
See Kemp v. State, 892 S.W.2d 112, 115 (Tex. App.BHouston [1st Dist.] 1994, pet. ref'd). 








In
the case at hand, the record does not show 1) whether counsel interviewed Rocka
before trial or 2) the reasoning underlying counsel=s
decisions concerning who to interview and call as a witness.  Therefore, Appellant has not rebutted the
presumption that his counsel=s
actions and decisions were motivated by sound trial strategy.  See Jackson, 877 S.W.2d at
771.  With regard to Appellant=s argument that his counsel was
ineffective for failing to object when the State did not prove Rocka sustained
a serious bodily injury, the testimonies of Hooper and Kopper demonstrate that
even if such an objection was lodged, the trial court would not have erred had
it overruled such an objection.  See
Vaughn, 931 S.W.2d at 566. 
It is not ineffective assistance for counsel to forgo making futile
objections.  See Wood v. State,
4 S.W.3d 85, 91 (Tex. App.BFort
Worth 1999, pet. ref=d).  

We
hold that Appellant has not met the first prong of Strickland
because he has not shown that his counsel=s
performance fell below an objective standard of reasonableness.  Therefore, we cannot conclude that
Appellant's trial counsel was ineffective. 
Appellant=s fifth
issue is overruled.

 

Conclusion

Appellant=s issues are without merit because 1)
he failed to properly preserve any error regarding the Confrontation Clause
during the testimony of the witnesses, 2) the evidence adduced at trial was
legally sufficient to support the jury=s
verdict, 3) there was no fatal variance between the proof and the indictment,
4) no Brady violation was shown, and 5) the record does not
support his claim of ineffective assistance of counsel.  Accordingly, the judgment of the trial court
is affirmed.

 

  
 SAM GRIFFITH   

  
Justice

 

 

Opinion
delivered February 10, 2006.

Panel consisted of Worthen, C.J., Griffith, J., and
DeVasto, J.

 

                                                                               

 

 

 

 

 

                                                             (DO
NOT PUBLISH)











[1]
Appellant filed his brief pro se.





[2]
The State did not file a brief in this
case.  





[3]
A person commits the offense of assault if the
person 1) intentionally, knowingly, or recklessly causes bodily injury to
another, 2) intentionally or knowingly threatens another with imminent bodily
injury, or 3) intentionally or knowingly causes physical contact with another
when the person knows or should reasonably believe that the other will regard
the contact as offensive or provocative. 
Tex. Pen. Code Ann. ' 22.01(a) (Vernon Supp. 2005).