Anthony PETRUCCELLI, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–03–00034–CR.

Court of Appeals of Texas,
Waco.

Aug. 17, 2005.

Stan Schwieger, Waco, for appellant.

Kathryn J. Gilliam, Falls County Dist. Atty., Marlin, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Anthony Petruccelli was convicted of the aggravated assault of his wife, Carol. He was sentenced to seventy years' confinement. He argues on appeal that (1) the trial court erred in admitting and publishing to the jury in the guilt/innocence phase of the trial a "day in the life" video depicting Carol's activities at a rehabilitation facility; (2) there is legally insufficient evidence to prove Petruccelli's prior conviction; (3) there is legally insufficient evidence to prove that his hands were deadly weapons; and (4) the trial court erred in admitting prejudicial photographs of Carol in the hospital. We affirm.

### Background

On an August morning at 9:15am, Everett Platt, Petruccelli's neighbor, noticed that the rear window of Petruccelli's truck was smashed. Platt stopped and asked Petruccelli what happened to his window. Petruccelli stated that he threw a pipe into the back of his truck, but it bounced up and hit the rear window. Platt inquired about Petruccelli's wife, Carol, and he replied that "the bitch is in the bedroom passed out, drunk on the bed." He explained that he found Carol drunk at a bar last night, brought her home, and that he may have "backhanded" her.

At 10:30am, Platt received a call from Petruccelli who was worried that he could not wake Carol up. He said that she was making gurgling sounds and asked Platt what he should do. Platt told Petruccelli to take Carol to a hospital. At the same time, the Falls county Sheriff's Department received a 9–1–1 call, but all that could be heard was a beeping noise. After tracing the call to Petruccelli, Sheriff Jerry Cowin went to investigate. Petruccelli met Cowin at the front door and told him

that everything was alright, and that he had just misdialed. Cowin left.

At noon, Platt drove by Petruccelli's house. He talked to Petruccelli who again expressed concern over Carol's condition, that she continued to make noises, and that she would not wake up. Again, Platt told him to take Carol to the hospital. Petruccelli finally agreed and asked Platt for his help in getting her to his truck. Platt followed Petruccelli into the house where he saw Carol laying half on the bed and half on the floor with bruises covering her face, eyes, and shoulders. As they were carrying her limp body to the truck, Platt heard Petruccelli say "Oh baby, look what I've done to you."

At the hospital, Carol was listed in critical condition. Her head and body were covered in bruises. She suffered severe head trauma, causing her to have problems with her memory, her thought processes, her speech, and her balance. She also lost most of her vision. Her injuries required that she be placed in a rehabilitation facility.

While at the hospital, Petruccelli told Platt, several medical professionals, and police officers that he did or might have slapped Carol around a few times, backhanded her, hit her, or accidentally hit her. Subsequently, Petruccelli was charged with aggravated assault.

Finding that he used his hands as a deadly weapon, a jury found Petruccelli guilty of aggravated assault. In the punishment phase of the trial, it was shown that Petruccelli had a history of beating his wife and that he had a prior felony conviction for assault and armed robbery. Petruccelli was sentenced to seventy years' confinement.

### Admission of Evidence— The Photographs

Petruccelli argues in his fourth issue that the trial court erred in admitting photographs of Carol in the hospital because the probative value of the photographs is substantially outweighed by the danger of unfair prejudice.

We review a court's decision to admit evidence for an abuse of discretion. *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex.Crim.App.1999); *Gipson v. State*, 82 S.W.3d 715, 721 (Tex.App.-Waco 2002, no pet.). Under Rule 403, a trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403. When conducting a Rule 403 analysis, we look to four non-exclusive factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex.Crim.App.2004) (citing *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex.Crim.App.1990)).

Six 14 by 24 inch photographs and four 4 by 6 inch photographs were admitted into evidence. They all portray Carol unconscious in her hospital bed, shortly after she was admitted. Most portray her nude in various positions in order to adequately display the extent of her injuries. Bruises on her arms, breasts, back, buttocks, thighs, and knees are clearly visible along with standard hospital equipment. Also, some pictures depict a close-up of Carol's face showing bruising around her eyes, a cervical collar, and various tubes entering her mouth and nose.

The State argues that the probative value of this evidence is not outweighed by its unfairly prejudicial effect because proof of

serious bodily injury is an element of the offense of aggravated assault. TEX. PEN. CODE ANN. § 22.02(a)(1) (Vernon 2003). While it is true that the State has the burden to prove serious bodily injury beyond a reasonable doubt, Petruccelli stipulated that there was serious bodily injury. Therefore in this respect, the photographs have limited probative value.

However, one of Petruccelli's defensive theories was that Carol received her injuries by twice falling out of his moving truck. The State's expert witnesses emphatically denied that Carol's injuries were of the sort typically received when a person falls out of a moving vehicle. They explained that if Petruccelli's theory were true, Carol should have numerous cuts and abrasions usually described as "road rash," and they referred to Carol's hospital photographs to demonstrate the absence of road rash on Carol's body. Thus these photographs are directly relevant and probative to counter the defense's theory, and the State's need for this evidence is clear. *See Montgomery*, 810 S.W.2d at 387–88 (holding evidence is admissible to rebut a defensive theory); *Richards v. State*, 54 S.W.3d 348, 350 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd) (holding that despite the defendant's stipulation to the cause of death, photographs were probative to prove intent).

■ Because the photographs are genuinely helpful to the jury in making its decision, the photographs are admissible unless the emotional and prejudicial impact of the pictures substantially outweighs their helpfulness. *Erazo*, 144 S.W.3d at 490. We also consider "the number of photographs, the size, whether they are in color or are black and white, whether they are gruesome, whether any bodies are clothed or naked, and whether the body has been altered by autopsy." *Id.* at 489. While some of the photographs are fairly large, they number only ten, and none of them portray blood or bleeding wounds. The photographs show a very bruised woman, but they are certainly not so gruesome as to impress the jury in some irrational, yet indelible way. *Id.* Nor are they so appalling that a juror of normal sensitivity would find it difficult rationally deciding the critical issues of the case after viewing them. *See Purtell v. State*, 761 S.W.2d 360, 370–71 (Tex.Crim. App.1988). Therefore, we find that the trial court did not abuse its discretion by admitting the photographs. We overrule Petruccelli's fourth issue.

### Admission of Evidence—The Videotape

■ In his first issue, Petruccelli argues that the trial court erred by admitting in evidence a videotape demonstrating the daily activities and treatment of Carol at a rehabilitation facility. Specifically, Petruccelli argues that the videotape is victim-impact evidence that is inadmissible during the guilt/innocence phase of a criminal trial. Further, he argues that, even if found not to be victim-impact evidence, the videotape is inadmissible because its probative value is substantially outweighed by the danger of unfair prejudice.

Before analysis, we must begin with a description of the content of the videotape. The tape is approximately 35 minutes long and consists of three sections: Carol walking in the facility; Carol with her memory specialist; and Carol with her occupational therapist.

In the first section, Carol is seen walking through the rehabilitation facility, which is decorated for Christmas. She has trouble with her balance, is using a walker, and has someone holding her arm to guide her. At one point, Carol asks about a particular person named Wendy. The person guiding her replies that Wendy is holding the camera. Carol attempts to

find Wendy by walking straight up to the camera until she brushes her nose against the lens, all the while repeating with a smile, "I can't see you. Where is she?"

Next Carol is seen sitting at a table next to a window with her memory specialist sitting opposite her. She is shown an array of photographs of her children and her grandchildren. Carol is asked to identify the people in the pictures, but she cannot and frequently holds the pictures upside down while guessing at what they show. Frustrated, Carol states that she will see the pictures better tomorrow. When asked why, she replies, "I'm going to pray tonight that God will let me see. God's going to help me see." Then Carol asks if she can take the pictures back to her room so that she can see her kids in the daylight. The therapist answers that it is daylight, and points to the window. Carol replies, "No, it's dark." When asked, she does not remember the year, day of the week, or month, though she was told this information earlier. Nor does she remember how she received her injuries. At different times she states that she slipped and fell, or had a stroke.

Next Carol is seen in her room at the facility. An occupational therapist leads Carol around the room by a belt at Carol's waist. She guides Carol in counting the steps to her closet and the bathroom, and she teaches Carol how to brush her teeth and put on her shoes. At one point, Carol attempts for approximately five minutes to put on a sock. Unable to do so, she gives up and the therapist puts the sock on for her.

The videotape was published to the jury in its entirety during the guilt/innocence phase of the trial [1], and was later played to the jury without sound during the State's closing argument while the State urged the jury to remember Carol when they debated their verdict.

■■■ Outside of the context of homicide cases,[2] victim-impact evidence is generally defined as evidence regarding "the physical or psychological effect of the crime on the victims themselves." *Lane v. State*, 822 S.W.2d 35, 41 (Tex.Crim.App. 1991); *see Matchett v. State*, 941 S.W.2d 922, 931 (Tex.Crim.App.1996); *DeLarue v. State*, 102 S.W.3d 388, 403 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd); *see also* TEX.CODE CRIM. PROC. ANN. ART. 56.03 (Vernon 2002).

Although the Court of Criminal Appeals has held that a victim's medical records or a doctor's testimony concerning the technical procedures required in caring for the victim are not victim-impact evidence, we find that this evidence is distinguishable. *See Garcia v. State*, 126 S.W.3d 921, 929 (Tex.Crim.App.2004); *Mathis v. State*, 67 S.W.3d 918, 928 (Tex.Crim.App.2002). The videotape does not consist solely of technical medical information as communicated by a third party or as seen on paper. Rather, it is a portrayal of not only Carol's physical therapy, but also of her emotional

1. During a hearing on the admission of the videotape, Petruccelli's counsel asked that the tape be published to the jury without sound, and the State agreed, yet the trial court ruled only that the tape be admitted. However, it is apparent from the record that the tape was played with sound because the State's witness was asked to identify for the jury the voices heard on the videotape. Furthermore, when the tape was played for the jury at closing argument, the reporter's record notes that it was played without the audio portion. There is no such indication in the record when the tape was first published.

2. In homicide cases, victim-impact evidence is traditionally defined as "evidence concerning the effect that the victim's death will have on others, particularly the victim's family members." *Mathis v. State*, 67 S.W.3d 918, 928 (Tex.Crim.App.2002).

and psychological state of mind as she struggles with daily living. While we hesitate to label the videotape a "day in the life" video, sometimes found in civil cases [3], we note that the video does give an impression of what Carol's day to day life must be like. The video portrays the physical and emotional effect the crime of aggravated assault had upon Carol, and therefore constitutes victim-impact evidence. Nonetheless, regardless of its characterization, we review this evidence under a Rule 403 analysis using the non-exclusive factors referred to above. *Erazo,* 144 S.W.3d at 489.

■ Victim-impact evidence is generally not admissible in the guilt/innocence phase of the trial, but can be admitted in the punishment phase when that evidence has some bearing on the defendant's personal responsibility and moral culpability. *Salazar v. State,* 90 S.W.3d 330, 335 (Tex.Crim. App.2002). However, the characterization of this evidence as victim-impact evidence does not necessarily preclude its admission in the guilt/innocence phase, because this evidence may also be characterized as evidence necessary to prove an element of the offense.

The State argues that the videotape is necessary to prove serious bodily injury, an element of the offense of aggravated assault, as stated above. Tex. Pen.Code § 22.02(a)(1). Yet, as explained, Petruccelli stipulated to serious bodily injury. And while the photographs are probative to rebut the defensive theory that Carol sustained her injuries while falling out of a moving vehicle, the videotape does not rebut this theory or add anything meaningful to the issue. Therefore, the probative value of the evidence is minimal. Also, given the admission of the photographs of Carol in the hospital, the State's need for the evidence is slight. The only possible reasons for the admission is to prove serious bodily injury or to inflame the minds of the jury. The former was stipulated to, and the latter is not acceptable under the Rules of Evidence if offered solely for that reason. *Erazo,* 144 S.W.3d at 489–90.

*Miller–El v. State,* is directly on point. *Miller–El v. State,* 782 S.W.2d 892 (Tex. Crim.App.1990). In *Miller–El,* the victim was shot in the spinal chord by the defendant. *Id.* at 894. During the punishment phase of the trial, the victim's doctor testified concerning the "special needs" the victim would require for the rest of his life due to the seriousness of his injury. *Id.* The State argued that this evidence was admissible in the guilt/innocence phase because it was probative of the defendant's intent to kill the victim, and the nature of the victim's injuries. *Id.* at 895. Therefore, the State argued, the evidence should be admissible in the punishment phase also. *Id.* The Court of Criminal Appeals disagreed. They found that while the bare facts of the victim's paralysis was admissible in the guilt/innocence phase, "the victim's future hardship as a paraplegic [did not have] any tendency to make more or less probable the existence of any fact of consequence at the guilt stage of trial." *Id.*

The videotape in question is highly prejudicial. And, while relevant and probative in the punishment phase of the trial, its contains no information that would have any tendency to make more or less probable the existence of any fact of conse-

---

**3.** *See Wal–Mart Stores, Inc. v. Hoke,* No. 14–99–00503–CV, 2001 WL 931658, *13 (Tex.App.Houston [14th Dist.] 2001, no pet.) (not designated for publication); *Pittsburgh Corning Corp. v. Walters,* 1 S.W.3d 759, 772– 73 (Tex.App.Corpus Christi 1999, pet. denied); *Apache Ready Mix Co., Inc. v. Creed,* 653 S.W.2d 79, 83–84 (Tex.App.San Antonio 1983, writ dism'd).

quence at the guilt stage of trial. Therefore the videotape was inadmissible in the guilt/innocence phase of the trial.

 Further, we note a point of concern. When this type of evidence is being offered in the punishment phase, judges are cautioned to place appropriate limits on the amount, kind, and source of victim-impact evidence. *Salazar,* 90 S.W.3d at 336 (citing *Mosley v. State,* 983 S.W.2d 249, 262–63 (Tex.Crim.App.1998)). The Court of Criminal Appeals requires heightened judicial supervision of this type of evidence in the punishment phase. *Salazar,* 90 S.W.3d at 336. Most assuredly, the same supervision applies in the guilt/innocence phase. We also find it disconcerting that there is no indication that the trial court viewed the videotape before admitting it into evidence. "It is equally difficult for a trial judge to weigh the probative value against the potentially unfair prejudice of a particular item of evidence without first reviewing it." *Id.* at 336–37.

For the foregoing reasons, we find that the trial court erred by admitting the videotape in evidence during the guilt/innocence phase of trial.

### *Harm Analysis*

 Having found error, we consider the harm, if any, caused by the admission of the tape. We will disregard any error that does not affect a substantial right of the defendant. TEX.R.APP. P. 44.2(b); *Haynes v. State,* 85 S.W.3d 855, 859 n. 4 (Tex.App.-Waco 2002, pet. ref'd). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). We do not reverse if, "after examining the record as [a] whole, [we have] fair assurance that

the error did not influence the jury, or had but a slight effect." *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *see also Schutz v. State,* 63 S.W.3d 442, 444 (Tex.Crim.App.2001). The reviewing court should consider everything in the record, including all the evidence admitted, the arguments, and voir dire. *Motilla v. State,* 78 S.W.3d 352, 358 (Tex.Crim.App. 2002). The strength of the evidence of guilt, especially if it is overwhelming, is a factor to be considered. *Id.* at 357–58; *Haynes,* 85 S.W.3d at 859 n. 4. However, if there are "grave doubts" about whether the error did not effect the outcome, then the error is treated as if it did effect the outcome. *Thomas v. State,* 137 S.W.3d 792, 796 (Tex.App.-Waco 2004, no pet.) (citing *Fowler v. State,* 958 S.W.2d 853, 865 (Tex.App.-Waco 1997), *aff'd,* 991 S.W.2d 258 (Tex.Crim.App.1999)).

After examining the evidence as a whole, we conclude that the admission of the videotape had only a slight effect on the jury. *Johnson,* 967 S.W.2d at 417; *Castillo,* 910 S.W.2d at 127–28; *Garcia,* 827 S.W.2d at 30. The record reveals numerous admissions from Petruccelli, including a signed statement, that he hit Carol. This, along with the medical testimony that Carol's injuries were caused by multiple impacts consistent with being beaten, is more than enough evidence of guilt to render the erroneous admission of the videotape harmless. *Motilla,* 78 S.W.3d at 357–58. While we note that the State emphasized the videotape during closing argument, it was for a short period of time and without audio. Though a close question, we cannot say that we are in "grave doubt" about whether the error affected the outcome. *Thomas,* 137 S.W.3d at 796. Given the strength of the evidence of guilt, we find the erroneous admission of the videotape harmless. *Motilla,* 78 S.W.3d at 357–58.

Accordingly, we overrule Petruccelli's first issue.

### Insufficiency of the Evidence— Deadly Weapon

Petruccelli argues in his third issue that there is factually insufficient evidence to prove that he used or exhibited his hands as deadly weapons capable of causing death or serious bodily injury.

In conducting a factual sufficiency review, we "consider[ ] all of the evidence in a neutral light" and determine whether the factfinder was "rationally justified in finding guilt beyond a reasonable doubt." *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App.2004); *Davis v. State*, 147 S.W.3d 554, 556 (Tex.App.Waco 2004, no pet.).

> [T]here are two ways in which the evidence may be [factually] insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met.

*Zuniga*, 144 S.W.3d at 484–85.

A person commits the felony offense of aggravated assault if he commits assault and (1) causes serious bodily injury to another, or (2) uses or exhibits a deadly weapon during the commission of the assault. TEX. PEN.CODE ANN. § 22.02(a) (Vernon 2003). A deadly weapon is anything manifestly designed, made, or adapted for the purposes of inflicting serious bodily injury or anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury. TEX.

PEN.CODE ANN. § 1.07(a)(17)(A), (B) (Vernon 2003).

Petruccelli's indictment alleged that his hands constituted deadly weapons. Body parts, such as hands and knees, may be deadly weapons based on their manner of use or intended use and their capacity to produce death or serious bodily injury. *Turner v. State*, 664 S.W.2d 86, 90 (Tex. Crim.App. [Panel Op.] 1983); *Vela v. State*, 159 S.W.3d 172, 182 (Tex.App.-Corpus Christi 2004, no pet.). To determine whether something is a deadly weapon, the jury may consider all the surrounding facts, including the defendant's words. *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim.App.1983); *Vela*, 159 S.W.3d at 182. The State does not have to prove that the complainant actually sustained serious bodily injury for the alleged weapon to be a deadly weapon. *Jefferson v. State*, 974 S.W.2d 887, 892 (Tex.App.-Austin 1998, no pet.). The State need prove only that the hands were capable of causing serious bodily injury in the way they were used or intended to be used. *Hill v. State*, 913 S.W.2d 581, 584 (Tex.Crim.App.1996); *Jefferson*, 974 S.W.2d at 892; *Vela*, 159 S.W.3d at 182.

Petruccelli made numerous admissions that he hit Carol. This evidence, coupled with medical testimony that Carol's injuries were consistent with being beaten multiple times with someone's hands, constitutes factually sufficient evidence. *Vela*, 159 S.W.3d at 182. Looking at the evidence from a neutral viewpoint, we find that the jury was rationally justified in finding that Petruccelli used or exhibited his hands as deadly weapons. *Zuniga*, 144 S.W.3d at 484. Accordingly, we overrule Petruccelli's third issue.

### Insufficiency of the Evidence— Prior Conviction

Petruccelli argues in his second issue that there is legally insufficient evi-

dence to prove his prior conviction because the conviction was not final.[4]

■ In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict. *Cardenas v. State*, 30 S.W.3d 384, 389–90 (Tex.Crim.App.2000). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.; McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim.App.1997).

The trial court admitted a penitentiary packet from the Commonwealth of Massachusetts, but it contained no judgment or sentence. The packet is accompanied by an affidavit that states that the documents pertain to an Anthony Petruccelli with the same date of birth as Appellant Petruccelli. It contains two pictures of Petruccelli, identifying marks, and fingerprints that were later identified by the State's expert witness as Petruccelli's fingerprints. The packet also includes a "complaint of indictment data" stating that Petruccelli was charged with assault and armed robbery, and a warrant for commitment stating that Petruccelli was convicted of armed robbery and assault and is to be committed to ten years' confinement. Also, a Certificate of Parole is included which shows that Petruccelli was paroled by the Commonwealth of Massachusetts Parole Board.

■ When an out-of-state penitentiary packet has been introduced as evidence of a prior criminal record in the punishment phase, the State must establish, either by proof or request, that the trial judge took judicial notice of what our sister state considers sufficient documentary proof of a final conviction. *See Langston v. State*, 776 S.W.2d 586, 587–88 (Tex.Crim.App.

1989). In this case, the State did not do so. Therefore, in the absence of proof of the laws of the Massachusetts, we will presume that the law is the same as that of Texas. *Id.*

■ The State must prove beyond a reasonable doubt prior convictions alleged for the purpose of enhancement of punishment. *Zimmer v. State*, 989 S.W.2d 48, 51 (Tex.App.-San Antonio 1998, pet. ref'd). Our case law is clear that "before a conviction may be relied upon for enhancement in a later case, such prior conviction must be final." *Beal v. State*, 91 S.W.3d 794, 796 (Tex.Crim.App.2002). In order for a conviction to be considered final, a penitentiary packet must contain a properly certified judgment and sentence. *Langston*, 776 S.W.2d at 587–88. "[W]hen the State offers into evidence a certified copy of a judgment and sentence, it has made a prima facie case that the conviction reflected within that judgment and sentence is a final conviction worthy of respect." *Jones v. State*, 77 S.W.3d 819, 822–23 (Tex. Crim.App.2002). A document that is the "functional equivalent of the judgment and sentence required by Texas law to prove up a valid conviction" may be used in the absence of a judgment and sentence. *Langston*, 776 S.W.2d at 588.

A commitment order is considered a functional equivalent of a judgment and sentence. *See Doby v. State*, 454 S.W.2d 411, 413 (Tex.Crim.App.1970) (holding that despite the absence of a judgment and sentence, the "recitations of the commitment" document from New Mexico were sufficient to prove a final prior conviction); *Wilson v. State*, 15 S.W.3d 544, 555 (Tex. App.-Dallas 1999, pet. ref'd) (a commitment order has a "similar purpose" as a judgment and sentence).

---

4. Though Petruccelli argues that the trial court erred in admitting the prior conviction because it was not final, we interpret this issue as including the argument that there is no evidence to support the enhancement allegation. *See* Tex.R.App. P. 38.1(e), 38.9.

The commitment order states the offense committed and the sentence. *See Francis v. State*, 792 S.W.2d 783, 785 (Tex. App.-Houston [14th Dist.] 1990, pet. ref'd) (Louisiana commitment order showing the offense committed and sentence was sufficient to establish prior conviction). The commitment order is accompanied by an affidavit from the Central Records Supervisor of the Massachusetts Department of Correction stating that the attached documents are true and accurate copies and giving the commitment order an indicia of authority. *See Banks v. State*, 158 S.W.3d 649, 653 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (commenting on the court's inability to find a Texas case holding that a pen packet lacking a judgment and sentence and devoid of any indicia of authenticity is prima facie proof of a prior conviction); *Johnson v. State*, 740 S.W.2d 868, 871 (Tex.App.-Houston [14th Dist.] 1987, pet. ref'd) (holding that New York certificate of commitment, when accompanied by certification of authenticity, was sufficient to prove a prior conviction); *Williams v. State*, 1999 WL 442010, *5, 1999 Tex.App. LEXIS 4876, *13–14 (Tex.App.-Houston [14th Dist.] July 1, 1999, pet. ref'd) (not designated for publication) (holding that certified copies of records from the Florida Division of Corrections were the functional equivalent of a judgment and sentence and were sufficient to prove a prior conviction). Therefore, we find that the commitment order containing identifying fingerprints, photographs, and marks, stating the offense committed and the sentence imposed, and containing an indicia of authenticity is the functional equivalent of a final conviction.

Viewing the evidence in the light most favorable to the verdict, we find that there is legally sufficient evidence to prove Petruccelli's prior conviction. *See Cardenas*, 30 S.W.3d at 389–90. Accordingly, we overrule Petruccelli's second issue.

## Conclusion

Having overruled Petruccelli's issues, we affirm his conviction.

Chief Justice GRAY concurring.

TOM GRAY, Chief Justice, concurring.

Because, with regard to issue two, the majority now holds the Massachusetts pen packet is sufficient evidence of a prior felony conviction to support the enhancement, I withdraw my Dissenting Opinion issued March 9, 2005 and concur in the judgment of the Court now affirming the trial court's judgment in all respects. I must again note, however, that the only issue necessary for our disposition of issue two was whether the Massachusetts pen packet was admissible. Petruccelli's issue is that the "trial court erred in allowing evidence of Appellant's prior conviction." The brief goes on to discuss the standard of review regarding the admission of evidence, not the sufficiency thereof.

With these comments, I concur in the judgment but not in the opinion.