Anthony PETRUCCELLI

v.

STATE.

No. PD–1523–05.

Court of Criminal Appeals of Texas.

Feb. 15, 2006.

Concurring Opinion March 22, 2006.

Stan Schwieger, Waco, for Appellant.

Kathryn J. Gilliam, District Attorney, Marlin, Matthew Paul, State's Atty., Austin, for State.

COCHRAN, J., filed an opinion concurring in the refusal to grant appellant's petition for discretionary review.

I withdraw my previous opinion filed on February 15, 2006, and substitute this one.

Appellant was convicted of aggravated assault of his wife, Carol, and sentenced to seventy years' imprisonment. On appeal, he contended, *inter alia*, that the trial court erred in admitting a "day in the life" video depicting Carol's activities in a rehabilitation facility. The court of appeals found that, while admission of the video during the guilt phase of the trial was error, it was harmless error.[1] Appellant petitioned this Court for discretionary review to determine whether "[t]he Tenth Court erred in holding that the video tape of inadmissible victim impact evidence viewed by the jury in the guilt phase was not harmful error."[2] After reviewing the record, I agree that the court of appeals correctly concluded that the erroneous admission of the video tape was harmless, but just barely.

Because the use of victim impact evidence such as this video—especially during the guilt phase of a trial—is so fraught with danger, I add the following remarks.

The thirty-five minute long video depicts Carol as she works with various specialists at her rehabilitation facility. The court of appeals provided a detailed description of the highly emotional scenes, which showed Carol's inability to walk or dress herself without assistance,[3] her visual and mental impairment, her inability to determine what day of the year or week it is, or even

---

**1.** *Petruccelli v. State*, 174 S.W.3d 761, 769–70 (Tex.App.-Waco 2005).

**2.** Appellant presented two issues for review. The first issue dealt with the evidentiary sufficiency of a prior conviction from another state for use of enhancement purposes. That

issue, while interesting, does not raise serious concerns for me.

**3.** One section shows her using a walker to navigate through a room that is decorated for Christmas.

to recognize pictures of her own children and grandchildren.[4]

Both at trial and in its appellate brief, the State contended that the tape was admissible as evidence of the extent of Carol's injuries. At trial, the State argued that the video was admissible "to show that Carol sustained a serious bodily injury that resulted in the protracted loss or impairment of the function of any bodily member or organ."[5] After a brief hearing on the issue, the trial court overruled appellant's Rule 403[6] objection without explanation. In finding the video inadmissible, the court of appeals stated that it was "highly prejudicial," and "contain[ed] no information that would have any tendency to make more or less probable the existence of any fact of consequence at the guilt stage of trial."[7] Well, it did have *some* probative value; it certainly did show that Carol suffered serious bodily injury from which she will probably never fully recover. In spades. With a hammer.

But that fact had already been proven by copious other, less emotionally-fraught, evidence. First, the State offered several photographs taken shortly after Carol's arrival at the hospital; these photographs clearly depicted her extensive injuries. Second, the State questioned Carol's emergency-room physician, her treating neurosurgeon, and the neuropsychologist in charge of her rehabilitative care. All of these witnesses testified to the extent of Carol's injuries; her neuropsychologist testified regarding the long-term prognosis of her rehabilitation.

Furthermore, the issue of "serious bodily injury" was not a contested issue at trial. Had the extent of Carol's injuries been disputed, or had the cross-examination of the medical experts been focused upon their findings that she suffered long-term or permanent debilitation, the Rule 403 calculus of probative value would, of course, be different. While it is certainly true that otherwise probative evidence cannot (and should not) be excluded *merely* because it is unpleasant or may excite the jury's emotions,[8] the extent of its emotional appeal surely affects the balance between probative value and prejudicial

---

4. *Petruccelli*, 174 S.W.3d at 766–67. The court of appeals further noted that

> it is a portrayal of not only Carol's physical therapy, but also of her emotional and psychological state of mind as she struggles with daily living. While we hesitate to label the videotape a "day in the life" video, sometimes found in civil cases, we note that the video does give an impression of what Carol's day to day life must be like. The video portrays the physical and emotional effect the crime of aggravated assault had upon Carol, and therefore constitutes victim-impact evidence.

> *Id.* at 767–68 (citations omitted).

5. The State relied heavily on *Staley v. State*, in its argument that the video was admissible. 888 S.W.2d 45 (Tex.App.-Tyler 1994, no pet.). In *Staley*, the court of appeals stated that "[i]t is difficult to conceive, after extensive witness testimony concerning the nature and extent of [the victim's] injuries, how a video tape of [the victim] during his recovery period would heighten the passion of the jury to the detriment of Appellant." *Id.* at 51. However, this reasoning is contrary to the purpose of Rule 403 and to our more recent ruling in *Salazar v. State*, in which we cautioned "[c]ourts must guard against the potential prejudice of 'sheer volume,' barely relevant evidence, and overly emotional evidence." 90 S.W.3d 330, 336 (Tex.Crim.App.2002).

6. Tex.R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or needless presentation of cumulative evidence").

7. *Petruccelli*, 174 S.W.3d at 768–69.

8. *See Erazo v. State*, 144 S.W.3d 487, 502 (Tex.Crim.App.2004).

effect when other evidence has already proven the point. This is precisely the type of evidence that Rule 403 was designed to guard against.

However, I must also agree that the court of appeals was not clearly mistaken in concluding that admission of the video was harmless error in this particular case. The State presented very strong evidence of appellant's guilt. Appellant admitted to numerous individuals, including hospital employees, his neighbor, and the police, "that he did or might have slapped Carol around a few times, backhanded her, hit her, or accidentally hit her."[9] Further, expert medical testimony indicated that the severe injuries Carol sustained were consistent with being beaten. Thus, the court of appeals concluded that, although the issue was close, the court could not say it was in " 'grave doubt' about whether the error affected the outcome."[10] It is indeed a close call, because this is precisely the type of evidence which threatens the accuracy and integrity of the jury's deliberative process if the evidence of guilt is seriously contested.[11]

Thus, it is with some hesitation that I join the Court in refusing appellant's petition for discretionary review.

---

9. *Petruccelli*, 174 S.W.3d at 765.

10. *Id.* 769 (citations omitted).

11. Even in civil cases, there is considerable concern with the admission of "day in the life" video recordings because of their potential for manipulation, exaggeration, and inflammatory emotion. *See* Gregory T. Jones, *Lex, Lies, and Videotape*, 18 U. Ark. Little Rock L.J. 613, 639–40 & n. 135(1996) (collecting cases admitting and excluding "day in the life" videotapes in civil proceedings on the basis of unfair prejudice and cumulative effect); *see generally* J.B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 1001(2)[103], at 1001–43 (1993) (noting the need for heightened scrutiny when analyzing the cumulative nature of videotapes).