**Fernando Hernandez RODRIGUEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–10–00432–CR.**

Court of Appeals of Texas, Beaumont.

Submitted Aug. 15, 2011.

Decided Oct. 12, 2011.

---

Jeremy S. Dishongh, Law Office of Jeremy S. Dishongh, Conroe, for appellant.

Brett W. Ligon, Dist. Atty., Warren Diepraam, Jason Larman, William J. Delmore III, Asst. Dist. Atty's, Conroe, for state.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

A Montgomery County jury found the appellant, Fernando Hernandez Rodri-

guez, guilty of committing aggravated assault. *See* Tex. Penal Code Ann. § 22.02(a) (West 2011) (containing the elements for the crime of aggravated assault). Because the jury also found that Rodriguez used a deadly weapon in committing the offense, the judgment contains a deadly-weapon finding. *See* Tex.Code Crim. Proc. Ann. arts. 42.01 § 1(21), 42.12 § 3g(a)(2) (West Supp.2010) (requiring trial court to make affirmative finding in the judgment based on the fact-finder's affirmative answer to a deadly-weapon issue). The trial court sentenced Rodriguez to seven years of imprisonment. Tex. Gov't Code Ann. § 508.145(d) (West Supp.2010) (requiring inmate burdened by judgment containing an affirmative deadly-weapon finding to serve at least one-half of his sentence before being eligible for release on parole); Tex. Gov't Code Ann. § 508.149(a)(1) (West Supp.2010) (making an inmate, when the judgment of conviction contains an affirmative deadly-weapon finding, ineligible for mandatory supervision).

Rodriguez raises two issues in his appeal. In issue one, Rodriguez contends the evidence is legally insufficient to support his conviction for aggravated assault. In issue two, Rodriguez argues that the trial court erred when it allowed the State, during the guilt-innocence phase of his trial, to introduce a video recording created approximately one week before trial. We conclude the evidence is sufficient to support Rodriguez's conviction, and we further conclude that the trial court did not abuse its discretion in admitting the recording. We affirm the trial court's judgment.

## Factual Background

Rodriguez was charged with aggravated assault after the pickup he was driving hit a piece of construction equipment, a street sweeper, operated by Isaac Sheridan. The collision occurred on February 18, 2010, in a construction zone located near FM 1488 in Montgomery County, Texas. Sheridan, thrown from the street sweeper, was found more than one hundred feet from where the vehicles collided. Sheridan suffered a fractured skull, a compound fracture of the left leg, and collapsed lungs, and he was comatose for several weeks after the collision. At the time of the trial in September 2010, Sheridan could not talk or walk, was still being fed with a feeding tube, and had difficulty communicating.

When the collision occurred, Rodriguez was employed by a company that provided erosion control services on a project nearing completion to widen FM 1488. Rodriguez was driving a construction truck, and was taking several of the company's employees to repair a construction fence. After the collision occurred, Rodriguez told a City of Conroe policeman, Jeffery Smith, that before the collision he was traveling twenty-five to thirty miles-per-hour. However, other testimony at the trial indicates that Rodriguez was not traveling at a safe speed as he drove through the construction zone. One of the State's witnesses, Destiny Stark, who was traveling in the same direction as Rodriguez but on the portion of FM 1488 open to the public, testified that she was going fifty-five miles-per-hour when she noticed a pickup pulling a trailer "weaving, [and] speeding[,] because they flew by me like I was standing still and weaving in between construction equipment on the construction side of the roadway." Officer Chris Hill, the City of Conroe police officer who reconstructed the accident, testified that the posted speed limit on the portion of the roadway open to the public was forty-five miles-per-hour. Hill estimated that Rodriguez had been traveling at least sixty-eight to seventy miles-per-hour before the collision occurred. Hill also testified, based upon his

investigation, that Rodriguez's pickup skidded forty-five feet before impacting the street sweeper, and then skidded another two hundred seventy-eight feet after the impact. Hill stated that in his opinion, a speed within the construction zone of more than thirty miles-per-hour "would be completely unreasonable." According to Hill, Rodriguez's excessive speed prevented him from stopping. Hill also disputed that Sheridan's decision to turn into Rodriguez's path had caused the collision.

During the trial, Rodriguez introduced testimony intended to prove that the collision was unavoidable. The defendant's accident-reconstruction expert, Joseph Hinton, testified that Sheridan turned into Rodriguez's path leaving Rodriguez with less than one second to avoid the collision, making the collision unpreventable. One of Rodriguez's passengers, Jose Rios–Herrero, testified that he saw the street sweeper "way before we were approaching it[,]" and then, as they got closer, "it crossed right in front of us." Rios–Herrero later explained that he felt there was nothing they could do but "apply brakes and try to evade."

The record also includes evidence relevant to Sheridan's injuries. Although Rodriguez never stipulated that Sheridan received serious injuries, in final argument, Rodriguez's attorney told the jury it was clear that Sheridan's injuries had been serious. The evidence admitted during the trial includes Sheridan's extensive medical and nursing home records, as well as photographs of Sheridan on a stretcher while still located in the construction zone. Sheridan's physician, Dr. Bryan Cotton, and his mother, Adele Fields, described Sheridan's injuries. During Fields's testimony, the State introduced a short video recording that depicted Sheridan in a nursing home the week before the trial

started. The recording was played without audio as Fields explained where the doctors had removed a bone from Sheridan's skull, why Sheridan wore a bib, that he cannot feed himself, and that Sheridan's arms were in an abnormal position as compared to Sheridan's state before the collision. The transcript from the trial reflects that the recording was played in a space that represents only twenty-five lines of the reporter's record. The State's brief indicates the recording was "a mere two minutes long[.]"[1] The recording in the record consists of an approximate thirty-second segment, followed by copies of the same segment.

The jury found Rodriguez guilty of aggravated assault causing serious bodily injury, as charged in the indictment. In response to one of the other special issues, the jury found that Rodriguez used a deadly weapon during the commission of the offense. Following a punishment hearing, the trial court sentenced Rodriguez to seven years in prison.

### Sufficiency of the Evidence

In issue one, Rodriguez asserts the State failed to prove that he recklessly caused Sheridan's bodily injury. According to Rodriguez, from the evidence admitted during trial, the jury could only speculate about "the speed Rodriguez might have traveled ... while driving through the construction zone[.]"

We review a challenge to the legal sufficiency of the evidence in the light most favorable to the verdict to determine if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Brooks v.*

---

1. The appellant's brief does not mention how long it took to play the video before the jury.

*State*, 323 S.W.3d 893, 894–95 (Tex.Crim. App.2010). In reviewing the evidence, we give deference to the jury's responsibility to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from facts. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim. App.2007).

In this case, the State charged Rodriguez with aggravated assault. Under the Penal Code, a person commits an assault if he "intentionally, knowingly, or recklessly causes bodily injury to another[.]" Tex. Penal Code Ann. § 22.01(a)(1) (West 2011). The assault is an aggravated assault if the person who commits it "causes serious bodily injury to another," or, if the defendant "uses or exhibits a deadly weapon during the commission of the assault." Tex. Penal Code Ann. § 22.02(a).

■ The charge submitted to the jury allowed Rodriguez's conviction on any one of three culpable mental states; i.e., intentionally, knowingly, or recklessly. "When the trial court's charge authorizes the jury to convict on more than one theory, as it did in this case, the verdict of guilt will be upheld if the evidence is sufficient on any of the theories." *Hooper v. State*, 214 S.W.3d 9, 14 (Tex.Crim.App.2007). Therefore, with respect to proving that Rodriguez acted with criminal intent, the State's evidence would be sufficient if the evidence is sufficient to show, beyond a reasonable doubt, that Rodriguez acted recklessly when causing Sheridan to suffer a serious bodily injury.

■ Rodriguez argues that the jury's decision that he was speeding was speculative. But the record includes testimony by Officer Hill, admitted without objection, that Rodriguez was driving at least sixty-eight miles-per-hour before the collision occurred. Additionally, Stark testified that Rodriguez had passed her vehicle, which was traveling fifty-five miles-per-hour, "like I was standing still[.]" While there is evidence that contradicts the testimony of Officer Hill and of Stark, we are required to view the evidence in the light most favorable to the jury's verdict, and to allow the jury to fairly resolve conflict in the testimony. *Williams*, 235 S.W.3d at 750. On this record, the jury was entitled to disregard the estimate that Rodriguez had given of his speed and to reasonably infer that Rodriguez drove through the construction zone at a speed consistent with the testimony given by Officer Hill.

■ In determining whether Rodriguez acted recklessly, the jury was entitled to consider the degree to which Rodriguez's speed deviated from a prudent speed under the circumstances consisting of traveling in a construction vehicle with passengers in a construction zone that contained workmen. With respect to the culpable mental state of recklessness, the trial court instructed the jury that:

> A person acts recklessly, or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*See* Tex. Penal Code Ann. § 6.03(c) (West 2011). Generally, juries infer whether the defendant acted with a culpable mental state from circumstantial evidence. *See Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim.App.1978) (stating that, "whether one is aware of a requisite risk or simply should be aware of it, is a conclusion to be drawn through inference from all the circumstances by the trier of fact"). In this case, in addition to evidence that Rodri-

guez was driving at a high rate of speed, the evidence shows that Rodriguez was a construction worker driving a pickup with a trailer through a construction zone who had the opportunity to see Sheridan's street-sweeper operating at a sufficient distance that he could have chosen to safely control his speed, and that other construction workers and construction machines were in the zone as Rodriguez proceeded through it at an unsafe speed. The president of the company that employed Rodriguez testified that drivers for his company were instructed to be very cautious in driving through construction zones. Although there were no posted speed limit signs for the construction traffic in the portion of the zone that was not open to the public, the record contains the testimony of witnesses who stated that a speed of thirty miles-per-hour would be a safe speed for the construction traffic. Based on the evidence admitted before the jury, we conclude that a rationale jury could reasonably determine that Rodriguez was traveling at a speed that significantly exceeded a safe speed, that he knew that construction workers and his passengers were endangered by his actions, that he was aware of his company's requirement to drive with caution, that he was aware he was in a construction zone; and that he chose to consciously disregard a substantial and unjustifiable risk of the injury posed by colliding with objects or workers in the construction zone. Under the evidence before the jury, we conclude the jury, acting rationally, could reasonably conclude that Rodriguez acted recklessly.

With respect to the serious injury element of aggravated assault, Rodriguez does not argue that Sheridan did not suffer serious injuries. Viewing the evidence in the light most favorable to the jury's verdict, we hold the evidence to be legally sufficient to support the jury's conclusion

that Rodriguez committed aggravated assault. We overrule issue one.

## Videotape

In issue two, Rodriguez argues the trial court abused its discretion by admitting a video recording depicting the nature of the injuries that Sheridan suffered. In his brief, Rodriguez argues that the recording of Sheridan should have been excluded under Rule 403 of the Texas Rules of Evidence. *See* Tex.R. Evid. 403 (providing for the exclusion of relevant evidence if it is substantially outweighed by the danger of unfair prejudice). In support of his Rule 403 argument, Rodriguez relies on *Petruccelli v. State*, 174 S.W.3d 761 (Tex. App.-Waco 2005), *pet. ref'd*, 184 S.W.3d 747 (Tex.Crim.App.2006), in which our sister court found that a trial court committed error in admitting a videotape depicting the assault victim's daily activities and treatment during the guilt-innocence phase of a trial. *Id.* at 768–69.

In *Petruccelli*, the defendant stipulated that the victim of the assault, the defendant's wife, suffered a serious injury from the assault. *Id.* at 768. Rodriguez, in contrast, did not remove that element from the facts at issue because he did not stipulate that Sheridan's injuries were serious. Consequently, the short recording depicting Sheridan is relevant to proving serious bodily injury, one element required to be proven beyond reasonable doubt to prove that an aggravated assault occurred. *See* Tex. Penal Code Ann. § 22.02(a)(1) (including serious bodily injury as an element of aggravated assault). We conclude that the recording had some probative value in showing that Sheridan suffered a serious bodily injury and that its value in proving that Sheridan's injuries were serious slightly favors the trial court's decision to admit it. *See Erazo v. State*, 144 S.W.3d 487, 492–94 (Tex.Crim.App.2004)

(considering probative value of the evidence in reviewing trial court's Rule 403 ruling); *see also* Tex.R. Evid. 402 (providing that relevant evidence is generally admissible).

But concluding that the recording was relevant does not end our inquiry, as even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex.R. Evid. 403. When the State offered the recording into evidence, Rodriguez objected that the recording's relevance was outweighed by the danger of its unfair prejudice. He also argued that the recording was cumulative of other evidence showing Sheridan's injuries. At the point the recording was admitted, the trial court had admitted voluminous medical records showing that Sheridan had suffered a head injury and leg fracture, was hospitalized for approximately three months, and that he was then transferred in May 2010 to a rehabilitation facility. Notes concerning Sheridan's treatment in the August 2010 records of the rehabilitation facility where Sheridan lived reflect that he was receiving speech, occupational, and physical therapy services. After the medical records and the recording were admitted, Dr. Bryan Cotton, a surgeon who had treated Sheridan before Sheridan's discharge from the hospital, testified that Sheridan's injuries were life-threatening and would have permanent effects. The record also contains photos of Sheridan being removed from the accident site on a stretcher.

Despite the existence of other evidence to document Sheridan's injuries, the recording communicates that Sheridan's injuries were serious in a non-technical way that is capable of being easily understood by laymen. The majority of the other evidence documenting Sheridan's injuries was of a technical nature, and the other relevant evidence on the nature and extent of Sheridan's injuries covers periods from the date of the accident through approximately one month before the trial. The recording contained more current information, as it was taken in the week before the trial occurred. While Dr. Cotton testified that Sheridan would not be the same because of his injuries, it does not appear that Dr. Cotton continued to follow Sheridan's progress after Sheridan's discharge from the hospital in May 2010. Had the trial court not admitted the recording into evidence, the jury would have been required to rely on technical terms contained in the rehabilitation facility's records or Sheridan's mother's testimony concerning Sheridan's current condition. Under the circumstances here, the recording was useful as a simple summary visually depicting Sheridan's current state of health, and its value did not depend on interpretation of technical information or accepting the account of Sheridan's mother concerning Sheridan's current state. Having reviewed all the evidence, we conclude that the recording is largely, but not entirely, cumulative of the other evidence before the jury. *See Erazo,* 144 S.W.3d at 492–94 (considering the State's need for the evidence in reviewing trial court's Rule 403 ruling). Nonetheless, because the recording is not entirely cumulative, this factor weighs slightly in favor of the trial court's ruling.

We also consider the time involved in developing the evidence at issue. *Id.* at 495 (considering time to develop the evidence in reviewing trial court's Rule 403 ruling). The State notes that here, unlike *Petruccelli,* the recording was short, lasting approximately two minutes, played without sound, and that the recording depicts "little more than what a set of photo-

graphs could have shown." In *Petruccelli*, the video was approximately thirty-five minutes long and played twice, once, with sound, during the State's presentation of evidence, and then a second time, without sound, during the State's final argument. *Petruccelli*, 174 S.W.3d at 766–67. Here, the recording, was played only once for the jury and without sound. We conclude that the time factor strongly weighs in favor of the trial court's decision to admit the recording.

We also consider whether the recording had the ability to impress the jury in some irrational yet indelible way. *See Erazo*, 144 S.W.3d at 494. Rodriguez points to the recording's emotional appeal. However, after viewing the video recording, we are not persuaded that the information it depicts has unfair emotional appeal. In the recording, Sheridan is shown moving his arm slightly and can be seen opening his eyes. In our opinion, still photographs taken of Sheridan sitting in a chair would have demonstrated little more. *See id.* at 494–95. It appears the trial court did not believe the recording carried significant emotional appeal, as the trial court stated, after viewing the recording outside the presence of the jury:

> I was expecting a video that had tubes and IVs and blood and all that sort of thing, and I was not going to let that in, but I don't—I'm going to overrule your objection, if this is it. If something is going to pop up here that is something more than what [Rodriguez's attorney is] complaining about, we're going to have problems.

The recording does not appear to have been staged to exaggerate the extent of Sheridan's injuries. In this case, the State used the recording to assist Sheridan's mother as she gave her testimony to describe Sheridan's condition around the date of trial and to describe where a bone

had been removed from his skull. The recording itself is less than one minute long, but was repeated for approximately two minutes as Sheridan's mother described Sheridan's condition to the jury. While the recording is prejudicial because it shows that Sheridan had not recovered from his injuries, it is not in our opinion unduly so; the recording does not have an undue tendency to suggest that the jury decided the case on the basis of sympathy or another improper basis. *See Rogers v. State*, 991 S.W.2d 263, 266 (Tex.Crim.App. 1999) (explaining that unfair prejudice refers to the undue tendency of some evidence to suggest the jury make a decision on an improper basis, such as emotion).

After viewing the video outside the jury's presence, the trial court commented that the recording reflected no more than what the jury would see had Sheridan testified in court, and ruled the recording admissible. Having viewed the recording, we agree with the trial court that it was not unduly prejudicial, nor did the admission of the recording risk impressing the jury in an irrational yet indelible way. *See Erazo*, 144 S.W.3d at 494–95. We conclude that this factor also weighs in favor of the trial court's ruling.

After considering the entire record and the arguments of the parties regarding the admission of the recording, we hold the trial court did not abuse its discretion by admitting the recording into evidence. We overrule issue two. Having overruled Rodriguez's issues, we affirm the trial court's judgment.

AFFIRMED.