# NO. 12-20-00157-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CODY WAYNE ISBELL,* *APPELLANT* | § | *APPEAL FROM THE 349TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

A jury found Appellant, Cody Wayne Isbell, guilty of aggravated assault causing serious bodily injury to a family member, with a deadly weapon. The trial court assessed his punishment and sentenced him to twenty-five years in the Texas Department of Criminal Justice— Institutional Division. In one issue, Appellant contends the evidence is insufficient to support his conviction. We affirm.

### BACKGROUND

On August 3, 2018, Appellant borrowed his mother's car to go to Palestine. On the return trip to Neches where they lived, Appellant ran out of gas two miles from home. When he arrived home, he was angry and began breaking things in the house. He went outside where he found his brother, Joseph Largent (Joey). A conflict ensued. Jackie Isbell, the mother of both Appellant and Joey, had to go to a neighbor's home to call for help because Appellant had taken her cell phone and thrown it out of the yard. Appellant fled the scene on foot.

When the sheriff's deputies arrived, they found Joey lying face down in the yard in a semi-comatose state, unable to communicate except to moan and flail about. He had suffered severe head and facial trauma. Blood was coming from his ears, nose, and mouth. His clothes

were bloody and torn. Andrea Stapleton, a paramedic with Palestine Regional EMS, deemed his condition sufficiently critical to warrant his transportation to Tyler by Careflight helicopter.

Sheriff's deputies found Appellant at another brother's house seven miles away. He gave the police a statement in which he said, "My brother is a prick and he kept talking shit." He admitted kicking Joey. When asked if Joey hit him, Appellant responded "he did not." He then said he kicked Joey in the head, punched him and then walked away.

At trial, Jackie claimed she could not say why or how the altercation happened or who was to blame. Joey testified his injuries deprived him of any recollection of the events of August 3, 2018. The State introduced the medical records from Joey's seven day stay in the hospital. Those records showed that, when admitted, Joey had suffered a concussion and was bleeding from the brain (subdural hemorrhaging). He had an intra-oral laceration requiring repair. His face and mouth were so swollen he could not swallow. Stapleton testified that, based upon what she saw on the day of the injuries and on his hospital records, Joey's injuries were of a serious nature and could have caused death or impairment of bodily functions. Anderson County Sheriff's investigator Bobby Bishop testified that hands or feet are capable of causing death or serious bodily injury. Based on Joey's injuries, he testified that Appellant's hands and feet could be deadly weapons in this case.

Appellant testified in his defense. He claimed that, when he reached the house after running out of gas, his mother and Joey were fighting. Joey was armed with a shovel and his mother with a pipe. When he tried to break up the fight, Joey hit him in the face with the shovel. Only then, he claimed, did he strike and kick Joey. But he denied causing the injuries Joey sustained.

When cross examined, he admitted that he never told officers that Joey struck him with a shovel, that Joey and his mother were fighting, or that Joey ever assaulted him. In rebuttal, Jackie told the court that neither she nor Joey had hit Appellant or each other with a shovel or a pipe.

At the conclusion of trial, the jury found Appellant guilty of aggravated assaulted causing serious bodily injury with a deadly weapon against a family member. This proceeding followed.

Appellant maintains the evidence is factually and legally insufficient to support his conviction. However, the Texas Court of Criminal Appeals has decided that the ***Jackson v. Virginia*** legal sufficiency standard is the only standard the reviewing court should apply.

## Standard of Review

In reviewing the sufficiency of the evidence to support conviction, an appellate court views all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. ***Jackson v. Virginia***, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 61 L. Ed. 2d 560 (1979); ***Matlock v. State***, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). The appellate court defers to the trier of fact's determinations of credibility and may not substitute its own judgment for that of the fact finder. ***Brooks v. State***, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); ***King v. State***, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc).

## Applicable Law

The elements of the charged offense are that a person intentionally, knowingly, or recklessly causes serious bodily injury to a member of the person's family and the actor uses a deadly weapon during the commission of the offense. TEX. PENAL CODE ANN. § 22.02(b)(1) (West 2019). "Serious bodily injury" is that which creates a substantial risk of death or causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *Id*. § 1.07(a)(46) (West 2019). The definition of "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*. § 1.07(a)(17)(B) (West 2019). Hands may be deadly weapons based on their manner of use or intended use. ***Petruccelli v. State***, 174 S.W.3d 761, 770 (Tex. App.—Waco 2005, pet. ref'd), *cert. denied*, 549 U.S. 839, 127 S. Ct. 106, 166 L. Ed. 2d 66 (2006). The foot may also be a deadly weapon depending on the manner of its use. *See **Powell v. State,*** 939 S.W.2d 713, 717 (Tex. App.—El Paso 1997, no writ); *see also **Hilla v. State***, 832 S.W.2d 773, 779 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd).

"Family" includes individuals related by consanguinity or affinity, as determined under Sections 573.022 and 573.024, Government Code, individuals who are former spouses of each other, individuals who are the parents of the same child, without regard to marriage, and a foster child and foster parent, without regard to whether those individuals reside together. TEX. FAM.

CODE ANN. § 71.003 (West 2019). Individuals are related by consanguinity if they share a common ancestor; brothers are within the second degree of consanguinity. TEX. GOV. CODE ANN. § 573.023(c)(2) (West 2021).

A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a) (West 2019). A "reasonable belief" is one that an ordinary and prudent man would hold in the same circumstances as the actor. *Id*. § 1.07(a)(42) (West 2019).

The defendant has the burden of producing some evidence in support of a claim of self defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). The State has the burden of persuasion in disproving self defense. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991) (en banc). The burden does not require the State to produce evidence refuting the self defense claim; rather, the burden requires the State to prove its case beyond a reasonable doubt. *Id*. "A jury verdict of guilty is an implicit finding rejecting the defendant's self defense theory." *Id*. at 914.

**Discussion**

Appellant argues the evidence is insufficient because no witness could testify to Appellant's actual commission of the offense. Jackie told the court that she did not see a fight between her sons. Apparently because of his injuries, Joey had no recollection of anything that happened on the day he was assaulted. Therefore, he could not testify to who gave him such a severe beating. When the sheriff's deputies arrived in response to Jackie's call, Appellant had left. Joey could not communicate with the officers, and could only moan and flail about.

However, when Appellant was arrested later that day, he gave a statement to the sheriff's deputy. In that statement, he admitted kicking Joey in the head, punching him, and walking away. When asked if the victim hit him, he replied, "he did not."

Although she claimed she was unable to say that Appellant hit Joey, sometime after the struggle, Jackie attempted to call 9-1-1. Appellant took her phone and threw it away. There is no indication in the record that there was anyone else at the house who might have inflicted Joey's injuries.

Appellant testified that when he arrived at the house after running out of gas, his mother and Joey were fighting in the yard. He claimed that when he tried to intervene, Joey hit him in

4

the face with a shovel. He told the court that only then did he strike Joey in an attempt to defend himself. He claimed that he did not cause the serious bodily injuries that his brother sustained. However, Appellant admitted that, in his effort to defend himself, he kicked his brother in the head.

Appellant's self-defense testimony contradicts, in every important respect, his statement he gave at the time of his arrest. It was refuted by his mother's testimony that neither she nor Joey struck Appellant or each other. He claimed Joey hit him in the face with a shovel. But photographs taken of Appellant at the time showed no visible injuries to his face and head. Other than his mother, no one was present at the scene capable of inflicting the life threatening injuries on Joey.

Given the contradictory nature of Appellant's statements, his mother's testimony, the photographs of Appellant, and the absence of anyone else at the scene capable of such a savage assault, the evidence fully justified the jury in disbelieving his claim of self defense. Appellant's admission that he kicked Joey in the head as he lay prostrate on the ground is especially difficult to reconcile with his plea of self defense.

Hospital records showed that Joey suffered a concussion accompanied by brain bleeding. He was diagnosed as having an acute subdural hematoma. His hospitalization lasted seven days due partly to his difficulty in swallowing. An intra-oral laceration required repair. Based upon the hospital records and her own observations on the day of the attack and later in the hospital, Stapleton testified that Joey's injuries were serious and life threatening.

The deadly weapon alleged in this case were Appellant's hands and feet. Bishop testified that hands or feet are capable of causing death or serious bodily injury. He testified that, based on the severity of Joey's injuries, Appellant used his hands and feet in the attack in a manner rendering them deadly weapons.

The overwhelming weight of the evidence shows that Appellant brutally beat his brother senseless in a savage rage. There is also ample proof that, in carrying out the attack, he used his hands and feet as deadly weapons to inflict serous, life threatening injuries.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have found that Appellant committed the offense of aggravated assault causing serious bodily injury with a deadly weapon against a family member. Appellant's issue is overruled.

5

## DISPOSITION

Because we overrule Appellant's sole issue, the judgment is *affirmed*.

**BILL BASS**
Justice

Opinion delivered May 28, 2021.
*Panel consisted of Hoyle, J., Neeley, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(DO NOT PUBLISH)

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 28, 2021**

**NO. 12-20-00157-CR**

**CODY WAYNE ISBELL,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 349th District Court

of Anderson County, Texas (Tr.Ct.No. 349CR-19-34068)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Bill Bass, Justice.
*Panel consisted of Hoyle, J., Neeley, J. and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*